# RILEY, *County Clerk*, v. CARICO *et al.*

### No. 1473.　Opinion Filed July 12. 1910.

### (110 Pac. 738.)

1. **DRAINS — Districts — Assessments — Constitutional　Provisions.** Article 16 of the Constitution of Oklahoma, providing for the establishment of a department of highways and creation of improvement districts and systems of levees, drains, and ditches and of irrigation, is not limited by section 26 of article 10 thereof.

2. **STATUTES—Time of Taking Effect—Emergency Clause.** The declaring of an emergency by incorporating in an act that such measure is immediately necessary for the preservation of the public peace, health, and safety, when such an act provides for "the encumbrance of real property for a longer term than one year," is invalid.

　2 (a). The emergency having been declared without authority of law, such act, otherwise being valid, takes effect 90 days after the adjournment of the session of the Legislature at which it was passed.

3. **DRAINS—Creation of Drainage Districts—Viewers.** Section 24, art. 2, does not apply to section 3, art. 16, Const., so as to require the viewers or commissioners appointed under the provisions of article 1, c. 15. Sess. Laws 1909, to be selected from the regular jury list of names as prepared as the law provides.

4. **DRAINS—Drainage Districts—Bonds.** The bond required by section 4, art. 1, c. 15, Sess. Laws 1909, meets the requirements when it substantially complies with said section.

5. **DRAINS—Constitutional Law—Notice to Landowners—Due Process of Law.** The Legislature has a wide discretion in determining the kind of notice to be given, though not having the power to dispense with all notice.

　5 (a). The notice should be such as would reasonably and fairly apprise the landowner of the pendency of the proceedings so as to give him an opportunity to be heard on the merits.

　5 (b). Notice by publication, consisting of two successive insertions in a paper of general circulation in the county in which the land is located, is sufficient to constitute due process of law.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; J. J. Carney, Judge.*

Application by G. W. Carico and others for writ of mandamus to J. W. Riley, county clerk of Oklahoma County. From a judgment awarding the writ, the defendant brings error. Affirmed.

*Carlisle & Edwards,* for plaintiff in error.
*E. E. Reardon* and *Grant Stanley,* for defendants in error.
Copies of all briefs did not reach the reporter.

WILLIAMS, J. Application for writ of mandamus was made in the district court of Oklahoma county, State of Oklahoma, to require the county clerk to sign, certify, and affix the seal of said county to the bonds of Deep Fork drainage district No. 1 of said county, and register the same, the proceeds of which were to meet the expenses of the construction of a drainage ditch for said district. On answer to the alternative writ the peremptory writ was awarded, and, an appeal having been prosecuted to this court, the following questions are raised:

(1) That said bonds are invalid, in that three-fifths of the voters of said county have not assented thereto.

(2) That said bonds, to be issued under the provisions of chapter 30, Sess. Laws 1907-08, as amended by House Bill No. 526, Sess. Laws 1909, art. 1, c. 15, pp. 217-235, are not subject to the emergency. Such having been declared, the entire act is void.

(3) That the board of viewers was not constituted and appointed as required by section 24, art. 2, Const. Okla., and had no right to act.

(4) That the jurisdictional facts were not stated in the petition so as to entitle the board of county commissioners to assume jurisdiction of the proceeding.

(5) That the bond approved and filed was not in the sum as required by law.

(6) That there was no due process of law for want of notice.

(7) Want of jurisdiction on account of reference to the viewers for re-assessment.

1.   Section 1, art. 16, Const. Okla., after directing the establishment of a department of highways, especially vests the Legislature with the power to create improvement districts, and provides for building and maintaining public roads and for the utilization of convict and punitive labor thereon. Section 3 of the same article, correlative to the former section, declares that the Legislature, with a specific grant of power thereto, shall provide for a system of levees, drains and ditches, and of irrigation in this state when deemed expedient, and for a system of taxation on the lands affected or benefited by such levees, drains and ditches, or on crops produced on such land, to discharge such bonded indebtedness or expenses necessarily incurred in the establishment of such improvements, and for compulsory issuance of bonds by the owners or lessees of the lands benefited by such levees, drains, ditches or irrigation, or on crops produced on such land, and to provide for the issuance of bonds, and the means and manner of discharging such indebtedness or expenses necessarily incurred in the establishment of such improvements. See *Houston & Texas Ry. Co. v. Harry & Bros.*, 63 Tex. 259. Section 7 of article 10 supports this construction. Within the same article with section 26, limiting the indebtedness of cities and counties, etc., and section 8, providing that all property which may be taxed *ad valorem* shall be assessed for taxation at its fair cash value estimated at the price it may bring at a voluntary sale, is included section 7, providing that the Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation. Section 2 of article 12 provides that "the homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon. *    *    *" The "homestead," as included in section 7, is a construction by the Constitutional Convention

that the word "tax" as applied to general taxation, does not include an assessment for benefits, etc.

Section 6 of the organic act of Oklahoma Territory (Act May 2, 1890, c. 182, 26 Stat. 84) provides that "no tax shall be imposed upon the property of the United States, nor shall the lands or other property of the non-residents be taxed higher than the lands or other property of residents, nor shall any unequal discrimination be made in taxing different kinds of property, but all property, subject to taxation, shall be taxed in proportion to its value." In the case of *Jones et al. v. Holzapfel et al.,* 11 Okla. 405, 68 Pac. 511, it was held:

"While the authority of the city council to make the improvements within the municipality, and to levy assessments therefor upon the property especially benefited, is derived from the general power of taxation, yet such assessments are not 'taxes' under that provision of the organic act which provides that 'all property subject to taxation shall be taxed in proportion to its value.' Such assessments are no part of those general taxes which are imposed for the purpose of carrying on the ordinary expenses of government, and do not fall within the prohibition of the organic act."

According to the current weight of authority, a special assessment for local improvements, whilst of a species of taxation, is neither a tax within the meaning of the constitutional requirement that all taxes shall be uniform throughout the state, nor does the levying of such an assessment constitute taking of property without due process of law.

In 2 Cooley on Taxation (3d Ed.) at page 1199, it is said:

"The fact very clearly appears that, while there is not such a concurrence of judicial opinion as would be desirable, the overwhelming weight of authority is in favor of the position that all such provisions for equality and uniformity in taxation, and for taxation by value, have no application to these special assessments."

Beginning with page 1184, and ending with page 1202 of said volume, a full summary of the Constitutions of the different states, as they existed at that time, is found.

In the case of *Arnold v. Knoxville,* 115 Tenn. 195, 90 S.

W. 469, 3 L. R. A. (N. S.) 837, 5 Am. & Eng. Ann. Cas. 881, is found an elaborate discussion of the question wherein the former holding of that court was overruled, and the rule hereinbefore announced is declared. See, also, a collation of authorities on this subject in 25 Am. & Eng. Ency. of Law (2d Ed.) 1171-1172; also section 145 at page 233, 1 Page & Jones on Taxation by Assessment (1909).

2. It is contended by the plaintiff in error that the provisions of chapter 30, Sess. Laws 1907-08, as amended by House Bill 526, Sess. Laws 1909, declaring an emergency, is unconstitutional and void, as being in violation of article 5, § 58, Const. Okla. By its terms bonds are to be issued for a period of ten years, creating a lien or incumbrance on both the land and crops raised thereon for such period. Such an act cannot be put into immediate effect by declaring an emergency. *Oklahoma City v. Shields,* 22 Okla. 265, 100 Pac. 559; *Norris et al v. Cross,* 25 Okla. 287, 105 Pac. 1000; *In re Menefee,* 22 Okla. 365, 97 Pac. 1014. The fact that the action of the Legislature in declaring an emergency was void did not invalidate the act, but resulted in its taking effect ninety days after the adjournment of the Legislature at which it was passed.

3. Section 24, art. 2, Const., having no application to drainage or improvement districts, where the expenses of constructing same is borne by the land affected or benefited, is not a limitation upon any of the provisions of article 16 of the Constitution.

4. The petition for the writ of mandamus alleges that W. H. Odor and others filed with the county clerk of Oklahoma county a petition for the organization of a drainage district to be known as Deep Fork drainage district No. 1 of said county, and the issuing of bonds to meet the expenses of the construction of a drainage ditch, but does not allege that such petition was signed either by 15 per centum of the owners of or by the owners of 15 per centum of the aggregate acres of land to be benefited or affected by such drain or improvements, and to be assessed for construction thereof. Nor does the petition filed with the county

clerk for the formation of such district on its face purport to be signed by such per centum of the owners, etc., but the order of the board of county commissioners which appears as a part of the pleadings, being attached to the petition for the writ as an exhibit, recites that, "after submitting testimony and a full hearing being had on the matters and things alleged in said petition, it appearing that more than 50 per cent. of the persons interested and affected by the probable organization of said drainage district and the construction of the ditch and drain therein petitioned for, and it further appearing that the same was necessary for the public health, and necessary to add to the fertility of the soil and make possible the cultivation of the land along and near the course of said ditch and drain, it is therefore ordered and adjudged by the said board of county commissioners that a drainage commission and board of viewers be appointed," etc. There is nothing in the record tending to controvert this recital, and for the purpose of this case it is to be assumed that such recital is true.

5. The bond substantially complies with the statute, being unlimited in amount, and, if the sureties were sufficient, all requirements in this respect are met. If the sureties are not sufficient, that should be reached by motion. And, if held insufficient, a new bond should be required or the proceeding abated.

6. The act provides for notice to be published in a newspaper of general circulation in the county of the fact that the district would be formed, etc., and it is contended that this is not such a notice as was provided for in section 24, art. 2, Const. As heretofore held; said section has no application to this proceeding, and such notice as to publication as is required by the statute is sufficient. *Ritter v. Drainage Dist. No. 1, Poinsett Co.,* 78 Ark. 580, 94 S. W. 711; sections 121, 122, 2 Taxation by Assessment (Page & Jones, 1900.)

7. It is insisted that the county commissioners had no authority to set aside the assessment of benefits and damages made September 9, 1909, and to order the three viewers previously ap-

pointed and the county surveyor to go again upon the line described in the order and establish the exact location of said ditch or drain and report thereon. Said viewers filed said report on November 29, 1909, and on the same date the county clerk set a day for hearing, to wit, the 3d day of January, 1910, due notice of such hearing being given in a weekly newspaper published in said county for five consecutive issues, the first publication being on the 3d day of December, 1909, and the last on the 31st day of said month. On the 3d day of January, 1910, an order was entered reciting, *inter alia,* that:

"It further appearing that copies of said notice were sent by J. W. Riley, the county clerk, to each of the following persons * * * (including the Missouri, Kansas & Texas Railway Company and the St. Louis & San Francisco Railroad Company), and that a notice was delivered by Grant Stanley to C. N. Haskell, Governor of the State of Oklahoma, and the board of county commissioners of said county being present and having full knowledge of said proceedings, and the Missouri, Kansas & Texas Railway Company having filed its motion to quash notice of hearing on the final report of the board of viewers, and service thereof, and the same, having been duly considered by the board of county commissioners, is overruled, to the overruling of which the said Missouri, Kansas & Texas Railway Company excepts. And the Missouri, Kansas & Texas Railway Company having filed its motion to dismiss the proceedings herein, same is duly considered by the said board of county commissioners and is overruled by them, to which the said Missouri, Kansas & Texas Railway Company excepts. Thereupon the Missouri, Kansas & Texas Railway Company filed its plea in bar in said cause, and the same, having been duly considered by the said board of county commissioners, is overruled, to the overruling of which the said Missouri, Kansas & Texas Railway Company excepts, and thereupon the said Missouri, Kansas & Texas Railway Company filed its exceptions to the report of the board of viewers in said cause, and upon the said 3d day of January, 1910, John Coyle filed his exception and objections to the report of said viewers. And upon the said 3d day of January, 1910, Mary J. Collins filed her exceptions and objections to the report of said viewers. And upon the said 3d day of January, 1910, B. Barlow filed his exceptions and objections to the report of said viewers. And upon the said 3d

day of January, 1910, T. P. Smith filed his objections and exceptions to the report of said viewers. And upon the said 3d day of January, 1910, James M. Kuykendall filed his exceptions and objections to the report of said viewers. And upon the said 3d of January, 1910, J. S. Catron filed his objections and exceptions to the report of said viewers. And upon the said 3d day of January, 1910, George Collins filed his exceptions and objections to the report of said viewers. And, no other protest being filed and no other objections being made to the assessments therein, said cause and hearing upon said report of said board of viewers is adjourned until January 6, 1910. And, it appearing that there was no protest filed against the line of said drain and ditch as recommended by said board of viewers and said surveyor, it is hereby ordered and decreed that said line of ditch be as directed and ordered as follows, to-wit: * * * And the said exceptions of the Missouri, Kansas & Texas Railway Company, John Coyle, Mary J. Collins, B. Barlow, T P. Smith, James M. Kuykendall, H. S. Catron and George Collins having been duly considered, and the evidence having been introduced therein, and examined by the board of county commissioners, and it appearing to the board of county commissioners that said exceptions and objections are not well taken, and that said assessments should be confirmed, it being, however, expressly held that in making assessments of damages for said tracts of land, where the same are objected to by the owner of the land, that the same will not be considered an offset to the benefits assessed, the board of viewers and the board of county commissioners not having the power to condemn lands for right of way purposes, and that the assessment of damages shall not be of effect in case the same are accepted by the owners of said land, to which the attorney for said persons filing exceptions excepts."

The question arises as to whether the board of county commissioners had authority to set aside its order as to the previous assessment made. Section 15, art. 1, c. 30, Sess. Laws 1907-08, as amended by section 3, art. 1, c. 15, Sess. Laws '1909, provides that any person aggrieved may appeal from the order of the county commissioners making such assessments, and upon such appeal there may be determined either of the following questions:

"First, whether just compensation has been allowed for property appropriated, and second, whether proper damages have been

allowed for property prejudicially effected (affected) by the improvements. Third, and whether the property for which an appeal is prayed has been assessed more than it will be benefited, or more than its proportionate share of the cost of the improvements. The commissioners shall grant the appeal, if the appellant shall, within ten days from the date of the order appealed from, file a written application for an appeal, specifying therein the matters appealed from, verified by affidavit, and the application shall, thereupon, be recorded in the office of the county clerk. The commissioners if in session, and if in vacation the county clerk, shall fix the amount of bond to be given by the appellant; and the appellant shall, within ten days thereafter, file with the county clerk a bond payable to the State of Oklahoma, in an amount not less than that previously fixed, with at least two good and sufficient freehold sureties, conditioned to pay all costs of the appeal if the appeal be denied or dismissed. If the clerk approve the bond, he shall thereupon make and certify a transcript of the proceedings had before the commissioners relating to all matters involved in the appeal, and transmit the same, together with all original papers in the cause, on file in his office to the clerk of the district court within thirty days from the date of the approval of said bonds; provided, that nothing in this section shall be construed to authorize any appellant to stay the proceedings before the commissioners, or to prevent progress in the work of constructing such public drains and improvements."

Section 16, art. 1, c. 30, Sess. Laws 1907-08, as amended by section 4, c. 15, art. 1, Sess. Laws 1909, provides:

"The district clerk shall docket said appeal, in the district court, styling the appellant as plaintiff and the drainage district, giving its name and number, as defendant, and the cause shall stand for trial and be heard and determined as other appealed cases are tried in the district court. After the appeal is heard and determined in the district court, the district clerk shall return the original papers filed in his office by the county clerk, together with a transcript of the proceedings held in said cause in the district court, including a certified copy of the finding, verdict, judgment or decree of said court; the district clerk shall also return an itemized statement of the costs accruing on the appeal, and such costs shall be paid as hereinbefore provided. The commissioners shall thereupon cause such entries to be made on their record which may be necessary to give effect to the judgment of the dis-

trict court. The drainage commissioner shall have the power to condemn the right of way for a drain or other improvement; and when damages are allowed persons for property condemned or damaged, the same shall be paid in cash, without regard to any corresponding benefit, and any and all corresponding benefits accruing to such persons, or their property, shall be assessed against the same as in case of property benefited without corresponding damage; provided further, that nothing herein shall be construed to prevent the offsetting of damages with corresponding benefits when the owner of said lands consents thereto."

Section 17, art. 1, c. 30, Sess. Laws 1907-08, as amended by section 5, art. 1, c. 15, Sess. Laws 1909, provides:

"Upon the confirmation of the report of the viewers the commissioners shall draw warrants upon the treasury for the amount of any damages awarded by the report of the viewers, in favor of the owner of such land, and delivered the same to such owner, and the land so relinquished, or condemned as described by the report of the viewers, when confirmed, shall be forever considered and adjudged a right-of-way for the drain or other improvements. Should any persons interested in land appropriated or damaged by the proposed drain, or other improvements, fail to file their written exceptions to the report of the viewers, as hereinbefore provided, they shall be deemed to have acquired (acquiesced) in any such award and shall forever be (e)stopped from prosecuting any action to vacate or void the same."

The only questions that the district court had authority to determine on appeal were: First, whether just compensation had been allowed for property appropriated; and, second, whether the proper damages had been allowed for property prejudicially affected by the improvements; and, third, whether the property for which an appeal is prayed had been assessed more than it would be benefited, or more than its proportionate share of the cost of the improvements. It seems, however, by agreement to which the drainage district was a party, the assessment of benefits and damages and estimates of construction for said drainage district No. 1, as confirmed on November 24, 1909, was by said court vacated and set aside and held for naught, the Missouri, Kansas & Texas Railway Company and Deep Fork drainage district No. 1

of Oklahoma county being parties thereto. This order, having been entered by a court of general jurisdiction, with the parties before it, and no appeal having been prosecuted therefrom, was effective. On the same day the board of county commissioners of Oklahoma county in special session called for such purpose, pursuant to the order of said court, set aside and vacated its order made on the 9th day of September, 1909, confirming such assessment.

In 1 Cooley on Taxation (3d Ed.) at page 530, it is said:

"Special assessment for local improvements may be reassessed as well as general taxes, but statutory authority is required."

In 2 Page & Jones on Taxation by Assessment (1909) § 1909, p. 1537, it is said:

"If an assessment has once been made, it cannot be set aside by the public corporation that made it in the absence of statutory authority."

The only statutory authority that the board of county commissioners seems to have to set aside or amend such assessment after it has been confirmed is by virtue of section 16, art. 1, c. 30, Sess. Laws 1907-08, as amended by section 4, art. 1, c. 15, Sess. Laws 1909, which provides that:

"After the appeal has been heard and determined in the district court, the district clerk shall return the original papers filed in his office by the county clerk, together with a transcript of the proceedings held in said cause in the district court, including a certified copy of the finding, verdict, judgment or decree of said court. The district clerk shall also return an itemized statement of the costs accruing on the appeal, and such costs shall be paid as hereinbefore provided. The commissioners shall thereupon cause such entries to be made on their record which may be necessary to give effect to the judgment of the district court."

In this case the order by the board of county commissioners setting aside the original order confirming the assessment was made in accordance with the judgment or decree of the district court. This seems to have been permissible.

The question now arises as to whether the board of county

commissioners had authority to make a reassessment. Said order of November 24th also recites:

" * * * And it further appearing that upon the 1st day of February, A. D. 1909, the above matter came on for hearing upon the petition heretofore filed by W. H. Odor and others for the establishment of Deep Fork drainage district No. 1 of Oklahoma county, Oklahoma, and upon the report of the viewers theretofore appointed in said matter, and it appearing that due notice had been given of the time and place of the hearing of the petition, and the report of the viewers by publication for two weeks in the Daily Times, a newspaper printed and of general circulation in the county of Oklahoma, of the pendency of said petition, and of the appointment and report of said viewers, the place of beginning, route, and terminus of said drain and improvement, and the time at which the petition and report of the viewers would be heard, the last publication of which notice was ten days before the date fixed for such hearing, and it further appearing that no protest was filed in the office of the county clerk on or before the day set for the hearing of the report of said viewers, and no written remonstrance or objection against the same as located by the petition and report of the viewers setting forth the grievance of said remonstrator or objector, and the said board of county commissioners, having heard the evidence, do find that the proposed drain and improvement is necessary for sanitary and for agricultural purposes and will be conducive to the public health and of public utility, and do order and find that the said proposed ditch and drain be constructed, and the said drainage ditch be, and hereby is, established, and the said proceedings heretofore made be confirmed, and do hereby order and direct that the said W. J. Arthur, J. B. Thoburn and A. M. Gustin, the three viewers previously appointed, and the county surveyor, Warren E. Moore, to go upon the line described in the order and establish the precise location of said ditch and drain where, in their judgment, the proposed ditch and drain will prove most efficient and survey and level said described and established line. * * * Such report shall be made and filed in the office of the county clerk within thirty days of such survey being completed, and shall file the plans and specifications for such ditch and all estimates showing the probable cost of construction."

Said report having been filed on the 29th day of November, A. D. 1909, an order was made for a hearing on January 3, 1910,

and for notice of publication in the Oklahoma City Weekly Times for four weeks, the first publication to begin December 3, 1909.

It appears that, beginning practically anew, the provisions of the drainage acts were again substantially complied with. After the assessment was set aside, the original petition was considered for the purposes of reordering the viewers to act and report. That was tantamount to reappointing the same viewers and when they acted and reported, a day was set for hearing and a new notice was published. If a petition is filed in a court of limited jurisdiction and a trial is had thereon, but on account of irregularities the judgment is set aside and the service quashed, that same petition can be considered for jurisdictional purposes in order to issue an alias summons. This illustration seems to fit the case at bar. We conclude that upon the original petition the board of county commissioners had authority to reappoint the same viewers, and directing them to make a re-examination and report again upon such a petition was tantamount to a reappointment, and the fact that they did not take again the same oath would not be such a defect as would defeat the proceedings, as at most the jurisdictional question was filing the petition with the required number of landowners as signers thereto.

It follows that the judgment of the lower court is affirmed.

DUNN, C. J., and KANE and TURNER, JJ., concur; HAYES, J., absent and not participating.