## GAYMAN, *County Treasurer, et al.* v. MULLEN.

No. 7590.   Opinion Filed October 10, 1916.

Rehearing Denied December 19, 1916.

(161 Pac. 1051.)

1.    **DRAINS—Statutes—Drainage Districts—Appointment of Viewers —Assessments.** The act of March 24, 1910 (Laws 1910, c. 79), amending sections 3046, 3049, 3050, 3053, 3054, and 3057, c. 32, Comp. Laws 1909, relating to drainage and declaring an emergency, is within the provision of section 58, art. 5 (Williams, sec. 147a), of the State Constitution that an emergency measure shall not include, among other inhibited things, any provision for "the purchase or sale of real property," and the same did not take effect until 90 days after the adjournment of the session at which it was passed, that is, until June 18, 1910.

(a) The selection of drainage district viewers in accordance with the provisions of this act, on April 25, 1910, was invalid, and their services and report on June 22, 1910, under an order of the county commissioners made on April 25, 1910, was also invalid and afforded no basis for a hearing and for an assessment and lien against real property on account of drainage benefits.

2.    **SAME—Statutes—Repeal—Pending Proceedings.** Where, on August 12, 1909, a board of county commissioners, acting upon a petition for drainage improvements, appoints drainage district viewers under Laws 1907-8, p. 299 (section 2964, Rev. Laws 1910), to make the first view and report thereon, required by the statutes relating to drainage districts, and where, on September 14, 1909, in accordance with the report duly made by such viewers, such county commissioners found in favor of said petition for drainage improvements and directed such viewers, with a designated surveyor, to make the second and final view and report required by the statute as the basis for the final hearing in such proceedings and the assessment of real property on account of the benefits it will receive from such improvements, and where, on June 22, 1910, said viewers, having performed the services required of them, made and filed their report and the county commissioners thereafter, upon due notice and hearing, approved and confirmed the same and made such assessment, such report and assessment is valid, notwithstanding the act of March 29, 1910, which took effect on June 18, 1910, provided a different method and manner of selecting viewers in such cases.

(a) Under section 54, art. 5 (Williams, sec. 144), of the State Constitution, the repeal of a statute does not affect proceedings begun by virtue of such repealed statute, where the rights to which the proceedings relate remain unchanged, although such proceedings are in a matter involving legislative as well as judicial questions and in the main are of legislative character.

3.　SAME—Assessments—Review.　Under Laws 1907-08, p. 304, as amended by Laws 1909. p. 220, as amended by Laws 1910, p. 162 (section 2979, Rev. Laws 1910), there is an adequate remedy at law, by appeal, from an assessment of real property that is not benefited by a proposed drainage improvement.

(Syllabus by the Court.)

*Error from District Court, Lincoln County;*
*Chas. B. Wilson, Jr., Judge.*

Action by Mary A. Mullen against John J. Gayman, county treasurer, and others. Judgment for plaintiff, and defendants bing error. Reversed, with directions to dismiss petition.

*John J. Davis* and *Grant Stanley,* for plaintiffs in error.

*Erwin & Erwin,* for defendant in error.

THACKER, J. The plaintiffs in error will be designated as defendants, and the defendant in error as plaintiff, in accord with their respective titles in the trial court.

This is an action by plaintiff against defendants to vacate and set aside a special assessment of $2,280, based upon a finding of a drainage benefit, and to perpetually enjoin the collection of the same against her southwest quarter of section 15, in township 14 north, range 2 east, of the Indian meridian, in Lincoln county, as a part of Deep Fork drainage district No. 1, of said county, under Laws 1907-08, pp. 295-315, as amended by Laws 1909, pp. 217-236, as amended by Laws 1910, pp. 156-163 (sections 2959-3023, Rev. Laws 1910), upon showing as to the proceedings had and contending as to other facts and as to

the effect of our statutes that on August 7, 1909, a sufficient petition to the board of county commissioners of said county for the organization of this district and the construction of a main and lateral ditch was duly filed; that on August 12, 1909, under Laws 1907-08, p. 299 (section 2964, Rev. Laws 1910), three viewers were duly appointed by said county commissioners and, with a designated surveyor, directed to proceed to the premises along and adjacent to the line of the proposed drains and to report whether the same were practicable and necessary, or of private or public utility and benefit, which service was duly performed and which report showed that the proposed improvement was practicable and necessary and a public utility and benefit, and was accompanied by a recommendation of route, etc.; that on September 14, 1909, after due notice by publication under Laws 1907-08, p. 299 (section 2965, Rev. Laws 1910), the county commissioners found in favor of said petition for the said drainage improvements, and ordered and directed said viewers and surveyor to go upon the lands in said drainage district and established the precise location of the proposed drainage ditch and laterals, survey and level the established line thereof, set a stake at every 100 feet, numbering downstream, mark the intersections and boundaries of lands, township, range, and county lines, bench marks, and road and railroad crossings, determine the dimensions and form of said drainage improvements, what dispositon should be made of excavated earth, establish the number of cubic yards of earth or other substance to be removed and the cost per cubic yard of each section of 100 feet, and for the whole work, and to make report, profile, and plat of the same, together with a schedule of all lots and lands, and of public and corporate roads or railroads, together with the names and residences

of the owners that will be benefited, damaged, or condemned by or for the improvement, and the damage or benefit to each tract of 40 acres or less, and make separate estimate of the cost of location and construction and apportion the same to each tract in proportion to the benefit or damage that may result to each, apportion and allot the construction or expense of same—of the number of lineal feet and cubic yards of said work—to each lot or tract of land, road, or railroad in proportion to the estimate of benefits or damages, specify the manner and time in which such improvements were to be made and completed, the number of floodgates, waterways, farm crossings, bridges, and the dimensions thereof, and note the county and township lines and railroad crossings, etc., as required by Laws 1907-08, pp. 300, 301 (section 3050, Comp. Laws 1909), which was changed by the amendatory act of March 24, 1910, the same being Laws 1910, p. 159 (section 2968, Rev. Laws 1910), by inserting next after the requirement that "if the commissioners shall find that the proposed drain or improvement is necessary for sanitary or agricultural purposes, or will be conducive to the public health or a public utility, they shall cause to be entered upon their record such finding," the following: "And they shall so certify to the judge of the district court of such county, and request that he appoint three disinterested freeholders from the regular jury list of names prepared for the district court, who shall not be interested in the construction of said work and not of kin to any person interested therein; and thereupon the judge of the district court shall immediately cause ten days' notice to be given in some newspaper printed and of general circulation in the county, of the said application for appointment of viewers, and at the time stated therein shall appoint

three such disinterested freeholders from the regular jury list of names of his court, and shall cause the names of such viewers so appointed to be certified to the board of county commissioners, and the said county commissioners shall thereupon cause an order to be entered on their records" authorizing and directing the three viewers· so appointed and the county surveyor, etc.; that on April 25, 1910, the said viewers and surveyor having neither completed their work nor reported thereon, the judge of the district court of said· county acting upon the certified request of the county commissioners, assuming that the said act of March 24, 1910, which contained a section declaring the same an emergency measure to take effect and be in force from and after its passage and approval, was in effect, appointed three viewers and caused them to be certified to the county commissioners in accord with the above-quoted provisions of said act of March 24, 1910; that the county commissioners thereupon, on the same day, ordered and directed these viewers, together with a surveyor, to do and perform the same services with which. the former viewers and surveyor were charged by the order of September 14, 1909; that on June 22, 1910, the first set of appointed viewers with a surveyor, acting under the order of September 14, 1909, and the second and last-appointed set of viewers with a surveyor, acting under the order of April 25, 1910, each made a finding and reported the same to the board of county commissioners· in identically the same form and in accordance with the requirements of these orders; that on November 11, 1910, after due notice of the hearing under Laws 1907-08, p. 302 (section 2971, Rev. Laws 1910), the county commissioners approved and confirmed the report of both sets of viewers and ordered

said assessment of $2,280 as a lien upon plaintiff's lands hereinbefore described under Laws 1907-08, pp. 308, 309, as amended by Laws 1909, p. 225 (section 2988, Rev. Laws 1910); that 70 per cent. of said assessment was thereafter extended on the tax rolls of the county under Laws 1907-08, p. 309 (sections 2991, 2992, Rev. Laws 1910), and at the time of the commencement of this action the plaintiff had made default in payment and the county treasurer of Lincoln county was advertising this tract of land for sale and threatened to sell the same to pay the interest on said assessment.; that the petition for the organization of said drainage district No. 1 and the report of the said set of viewers requiring that such improvement be made included, but the reports of both sets of viewers on June 22, 1910, did not include and wholly omitted, provisions for a certain lateral ditch described in the said petition and in the first said report as follows: "A lateral ditch shall be constructed beginning at a point where the Captain creek intersects the Deep Fork ditch in the S. E. quarter of section 10—4—2, thence southwesterly through the N. E. and S. E. quarters of section 15—14—12, thence southwesterly through the N. E., N. W., and S. W. quarters of section 22—14—2"; that the plaintiff's lands would not be benefited by the construction of said drainage ditch and laterals thereto without the aforesaid Captain creek lateral, which lateral was again ordered on December 16, 1912, and a plat and profile for the same was filed April 6, 1914; that the plaintiff, erroneously believing that the construction of said Captain creek lateral was provided for in said viewers' report of June 22, 1910, filed no exception to the confirmation of these reports and assessment against her said lands under Laws 1907-08, p. 304, as amended by Laws 1909, p. 220, as amended by

Laws 1910, p. 162 (section 2978, Rev. Laws 1910) ; nor appealed therefrom as authorized by Laws 1907-08, p. 304, as amended by Laws 1909, p. 220, as amended by Laws 1910, p. 162 (section 2979, Rev. Laws 1910), and that said act of March 24, 1910, includes a provision for the purchase or sale of real estate and other provisions specifying conditions and procedure constituting a part of the general statutory law under which the lien or incumbrance provided for under the Laws 1907-08, pp. 308, 309, as amended by Laws 1909, p. 225 (section 2988, Rev. Laws 1910), may be fixed against real property, so that the said act of March 24, 1910, by reason of the constitutional inhibition against allowing such measures to take effect until 90 days after the adjournment of the session of the Legislature at which they are passed (section 58, art. 5, Williams, section 147a, of the State Constitution), notwithstanding this act is therein declared to be an emergency measure and to be in effect from and after its passage and approval, did not take effect until June 18, 1910 (see *Riley v. Carico*, 27 Okla. 33, 110 Pac. 738; *Norris et al. v. Cross*, 25 Okla. 287, 105 Pac. 1000; *In re Initiative State Question No. 10*, 26 Okla. 554, 110 Pac. 647), and so that, this act having gone into effect on June 18, 1910, the viewers' reports of June 22, 1910, were made after the first set of viewers had lost all authority to act by the change in the law under which viewers must be appointed, the second set of viewers being without authority because appointed under an act that had not at the time they were appointed gone into effect. The judgment below was for the plaintiff, and the defendants bring the case here for review.

There was and is no controversy except as to the law, unless in respect to whether said lands would be benefited without the Captain creek lateral. The judgment

below rests upon the propositions: (1) That the report of each of the two sets of viewers on June 22, 1910, and the action of the county commissioners thereon, on November 11, 1910, confirming the same and assessing plaintiff's real property, was absolutely void for want of legal authority in either set of viewers to act as such at the time of their said reports; and (2) that a provision for the Captain creek lateral, upon which said real property was dependent for any benefit whatever, having been omitted from the report of each set of viewers, the county commissioners had no jurisdiction to assess plaintiff's lands, and such assessment is absolutely void. And, attacking the basis of the judgment at both of these points, the defendants seek a reversal upon the propositions: (1) that the act of March 24, 1910, containing no direct or specific provision for an incumbrance of real property and being amendatory of the prior statutes only in respect to the procedure for organizing drainage districts in two or more counties and the bond for costs and expenses required in proceedings to organize drainage districts and the method and manner of selecting viewers, and authorizing appeals without bond in cases where the question of damages is involved, is not within the inhibition of section 58, art. 5 (Williams, section 147a), of the State Constitution, but is subject to its emergency clause and took effect on said date of its approval; (2) that, under section 54, art. 10 (Williams, section 144), of the State Constitution, the proceedings begun by the first set of viewers were not affected by the provision in the act of March 24, 1910, for a different mode and manner of selecting viewers; and (3) that, upon the authority of *Davis v. Board of County Commissioners*, 45 Okla. 284, 137 Pac. 114, the plaintiff had an adequate remedy at law; but the question as to

whether he had an adequate remedy by mandamus to compel the provision for the Captain creek lateral is not presented in their argument.

The act of March 24, 1910, is merely incidentally declaratory of all those portions of the prior statutes which are repeated without change in connection with the new and amendatory portions of this act, and is not a repeal and re-enactment of such repeated portions (1 Sutherland on Statutory Construction, 441; *Ely v. Holton,* 15 N. Y. 598; *Small v. Lutz,* 41 Or. 570, 67 Pac. 421, 69 Pac. 825; *Hellman v. Shoulters,* 114 Cal. 136, 44 Pac. 915, 45 Pac. 1068; *Gordon v. People,* 44 Mich. 485, 7. N. W. 69; *People v. Supervisors,* 67 N. Y. 109; 23 Am. Rep. 94; *McLaughlin v. Newkirk,* 57 N. J. Law, 298, 30 Atl. 543; *State v. Andrews,* 20 Tex. 230; *Central Pacific R. R. Co. v. Shackelford,* 63 Cal. 265; *Swamp Land Drainage District v. Glide,* 112 Cal. 85, 44 Pac. 451), and the new and amendatory portions of this act neither provide directly nor specifically for a lien *(Crow v. Lind,* 167 Mo. 228, 66 S. W. 1062, 67 S. W. 572), nor otherwise provide for a lien upon any basic facts which would not authorize the same under the prior law, nor relate, except remotely as hereinbefore shown, to the creation of a lien. But, although it appears that the act of March 24, 1910, does not provide for an incumbrance on real property so as to fall in this respect within the constitutional inhibition against allowing immediate effect to such acts of the Legislature upon a declaration of an emergency (section 58, art. 5, Williams, sec. 147a, of the State Constitution), this act at pages 160, 161, does contain the following provisions, which appear to bring it within the inhibition of that section of the Constitution in that it contains a provision for the purchase and sale of real estate:

"If the commissioners shall, upon petition of 50 per cent. of the resident landowners or the owners of 50 per cent. of the total acreage of the land embraced in such district, at any time before the completion of such drain or other improvement, find that the location or specification of any such drain or improvement should be changed, they may, by an order of record, change such location and dimensions, and may acquire the right of way for any such drain or improvement by gift, grant, purchase or condemnation proceedings."

It thus appears that the act of March 24, 1910, did not go into effect until June 18, 1910, 90 days after its passage and approval *(Riley v. Carico,* 27 Okla. 33, 110 Pac. 738), and that the selection of viewers by the district judge, on April 25, 1910, and their report to the county commissioners, on June 22, 1910, was without authority of law and void. This brings us to the question as to whether the proceedings by the set of viewers appointed on August 12, 1909, and directed on September 14, 1909, by the county commissioners to perform the services and make the report performed and made by them on June 22, 1910, were affected and rendered void by the act of March 24, 1910, which, as stated, took effect on June 18th, of that year.

Section 54, art. 10 (Williams, section 144), of the State Constitution reads:

"The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute."

In the case of *Gordon v. State of Kansas,* 4 Kan. (489) 421, it was held that a statutory provision (Comp. Laws Kan. 838) that "the repeal of a statute does not * * * affect any * * * proceeding commenced under or by virtue of the statute repealed" is, because of the

technical meaning of the word "proceeding," confined to judicial matters; that is, to proceedings in the prosecution or defense of an action, so that proceedings commenced under an act of 1863, as amended by an act of 1865, were put to an end by the repeal of these statutes by an act of 1867, which provided a different procedure and contained no saving clause; but in *Cincinnati et al. v. Davis et al.*, 58 Ohio St. 225, 50 N. E. 918, it was held:

"Where a resolution, declaring the necessity of the improvement of an alley, is made by the proper board of a city, at the time the resolution is adopted, the subsequent amendment of the law, whereby the making of such improvements as to alleys of a certain width is conferred on another board, does not work a discontinuance of the pending proceeding, though it be of such an alley; and the improvements should be prosecuted to completion by the board that adopted the resolution, unless otherwise expressly provided in the amendment."

The Ohio statute (section 79, Ohio Rev. Stats.) that is construed and applied in that case is substantially the same as the aforesaid Kansas statute and as our constitutional provision in the respect under consideration, and reads as follows:

"Whenever a statute is repealed or amended, such repeal or amendment shall in no manner affect pending actions, prosecutions, or proceedings, civil or criminal, and when the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions or proceedings, unless so expressed; nor shall any repeal or amendment affect causes of such action, prosecution, or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

And in the *City of Toledo v. Marlow*, 28 Ohio Cir. Ct. R. 298, it was held that the several statutory steps re-

quired for the improvement of a street by pavement or sewer constituted a "proceeding," within the meaning of the Ohio Rev. Stats., section 79, quoted above.

In *Bowman v. Cockrill,* 6 Kan. (311) 190, where it was contended by the plaintiff that a "tax deed was not *prima facie* evidence of anything prior to its own execution, because he claims that the laws under which the deed was executed have been repealed without any saving clause, and because none of the subsequent laws making tax deeds *prima facie* evidence of all proceedings antecedent to the execution of such deeds have any retrospective operation," the court said:

"Section 113 of this new act contains a saving clause which reads as follows: 'All proceedings, titles, etc., not completed at the time of the taking effect of this act, shall be carried to final determination and execution according to the laws in force under which they originated.' The case of *Gordon v. State ex rel.,* 4 Kan. 489, referred to by the plaintiff below, has no application in this case. The word 'proceedings' in the statute referred to in that case (Comp. Laws 838) may mean judicial proceedings; but the word 'proceedings' in said saving clause undoubtedly means tax proceedings, the same as it does in that clause of section 10 of chapter 198, Comp. Laws 878, which reads as follows: 'Such deed duly witnessed and acknowledged shall be *prima facie* evidence of the regularity of such proceedings from the valuation of the land by the assessor inclusive, up to the execution of the deed.' "

And in *State v. City of Topeka,* 68 Kan. 177, 74 Pac. 647, it was held that the word "proceeding" did not refer to judicial proceedings in Laws 1903, p. 243, c. 122, sec. 200, concerning cities of the first class, which reads as follows:

"The pasage of this act shall in no way affect any bond heretofore issued, contract entered into for any public

building, pavement, or sewer, tax or special assessment levied, action now pending, or proceeding of any kind commenced and not completed, by or on behalf of any city."

In that case it was said:

"It is urged that the word 'proceeding' has been judicially interpreted by this court to apply only to judicial proceedings. *Gordon v. State ex rel.*, 4 Kan. 489. This interpretation was given to the expression as used in section 7342, General Statutes of 1901. It was not, however, determined that the term could not be used to apply to other proceedings. * * * The act does not treat of judicial proceedings, but of the organization, powers and duties of cities of the first class, and particularly of issuing bonds and the erection of public improvements, and it was to protect proceedings of this character commenced under previously existing laws that the saving clause was enacted."

In *Prentis v. Atl. Coast Line Co.*, 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150, it was said:

"Proceedings legislative in nature are not proceedings in a court within the meaning of Rev. Statutes, section 720, no matter what may be the general or dominant character of the body in which they may take place. * * * That question depends not upon the character of the body, but upon the character of the proceedings."

In *Hale v. Henkel*, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, it was held that the word "proceedings" is not a technical one and is aptly used by the courts to designate an inquiry before a grand jury. These cases, excepting the first-cited case from Kansas and the Ohio cases, merely illustrate the variety of uses made of the term "proceeding" in nonjudicial as well as judicial matters, and indicate that it often has a less technical and less restricted meaning than might be thought from a reading of that Kansas case alone.

In Black's Law Dictionary the word "proceeding" is defined as follows:

"In a general sense, the form and manner of conducting judicial business before a court or judicial officer; *regular and orderly progress in form of law,*" etc. (The italicization is ours.)

And, although the question does not appear to have been heretofore discussed by this court, in the case of *Harlow v. Board of Commissioners of Payne County,* 33 Okla. 356, 125 Pac. 449, this court held that a proceeding to construct a bridge nearer than six miles to another bridge in contravention of the act of March 11, 1903 (Laws 1903, p. 246), as amended by the act of March 10, 1905 (Laws 1905, p. 354, being section 7885, Comp. Laws 1909), in respect to the distance between bridges, being without authority and subject to be enjoined, was not legalized nor affected by the act of February 17, 1911 (Laws 1911, p. 41), repealing the provision of prior laws so contravened because of this provision of our Constitution. In that case a temporary injunction was granted to prevent the county commissioners from entering into and carrying out a concontract of construction of a certain bridge over a river within six miles of another bridge upon the erroneous view that such bridges were farther apart; and from an order dissolving that injunction, before the act of February 17, 1911, this case was brought to this court for review, where it was reversed upon the grounds that the distance between the bridges was less than six miles and the proposed bridge was within the inhibition of the prior statute, with the statement in the body of the opinion that the proceeding was not affected by the act of February 17, 1911, repealing the inhibition because of the provision of the Constitution now under consideration.

However, we deem it unnecessary to decide and do not decide whether the term "proceeding," as used in this

section of our Constitution, includes any purely legislative or purely executive, as well as judicial and quasi judicial, proceedings, as the proceedings to assess and fix a lien against real property on account of drainage benefits involve both legislative and judicial questions (9 R. C. L. 623), although the propriety, wisdom, and public necessity of drainage rest exclusively with the Legislature (9 R. C. L. 623, 624), and all the proceedings thereunder may have a legislative character (9 R. C. L. 641).

In 11 Mod. Am. L. 446, it is said:

"The hearing may be before the board which made the original assessment, or before another board which while acting judicially in this instance is not a court and is composed of executive officers."

See *Hibben v. Smith,* 191 U. S. 310, 24 Sup. Ct. 88, 48 L. Ed. 195.

We think this change in the method and manner of selecting viewers, being in a mere matter of procedure and not in any matter of rights, does not affect the proceeding begun by virtue of the repealed statute in this respect, and that the report of the viewers appointed and acting under the old statute on the fourth day after the new statute went into effect was as valid as if there had been no change in the former statute.

As to the proposition that the proposed drainage improvement, without the Captain creek lateral at the time of the assessment, included no benefit to the plaintiff's lands, we think she had an adequate remedy at law by appeal, if not by mandamus, although the statute authorizing appeals (Laws 1907-08, p. 304, as amended by Laws 1909, p. 220, as amended by Laws 1910, p. 162, the same being section 2979, Rev. Laws 1910) seems to assume at least nominal benefits to the appellant's property and in-

terms authorizes an appeal only for the purpose of determining "whether the property for which an appeal is prayed has been assessed more than it will be benefited, or more than its proportionate share of the cost of the improvements."

In *North Canadian River Drainage Dis. No. 3 of Oklahoma County v. Fleener,* 53 Okla. 808, 158 Pac. 902, although the precise question as to whether this statute empowers the district court to relieve an appellant from all damages whatever is not discussed, a judgment of such court granting such complete relief was affirmed against an assessment made by the county commissioners with the statement that:

"'As there is evidence reasonably tending to support the findings of the court that the ditch was of no benefit to plaintiff's land, we will not disturb the judgment."

Aside from the questions as to whether the plaintiff had an adequate remedy by mandamus and as to whether the subsequent provision for the Captain creek lateral make this a moot question, which we do not determine, it appears to us that plaintiff was not entitled to the relief granted her in the trial court.

The judgment is reversed, and the cause remanded, with instructions to dismiss plaintiff's petition.

SHARP, HARDY, and TURNER, JJ., concur; KANE, C. J., not participating.