School Land Department — Loans — Interest Rates 64 O.S. 51 [64-51] — 64 O.S. 52 [64-52] (1968), will not become effective until 90 days after the adjournment of the Legislature. The Attorney General is in receipt of your letter of May 31, 1968, wherein you request the opinion of the Attorney General as to the lawful rate or rates of interest applicable to three categories of loans now pending within the School Land Department. The pending loan applications fall into three: A. Applications received prior to May 7, 1968. B. Applications received on May 7, 1968, and C. Applications received after May 7, 1968. On February 29, 1968, the Commissioners of the Land Office adopted the following resolution: "It was moved by Mr. Cobb and seconded by Mr. Ballinger that in the event the present Legislature changes the rate of interest charged upon loans, then, in such event, such new rate of interest shall apply to all loan applications received by the Department after the effective date of the Act, and the present rate of interest (4-1/2%) shall apply to all applications received on or prior to the effective date of the Act." Subsequently, employees of the School Land Department advised loan applicants by mail that their loans would be made at 4 1/2 per cent per annum if the applications were filed and the fees paid prior to the effective date of any act of the Legislature increasing said rate of interest. There are a total of 116 applications for loans now pending in the School Land Department and said applications were filed and the fees paid thereon on dates ranging from September 1967, through and including May 13, 1968. None of these 116 applications were approved by the Commissioners before May 7, 1968. On May 7, 1968, Senate Bill No. 620 was signed by the Governor with the emergency clause attached thereto raising the rate of interest from 4 1/2 per cent to S per cent per annum. Prior to May 7, 1968, the Commissioners of the Land Office had authority to make farm loans at 4 1/2 per cent per annum under the provisions of 64 O.S. 52 [64-52] (1965), which prescribed all the procedures for making such loans from the receiving of the loan application to the final closing of such loans. If Senate Bill 620 became effective on the date the same was signed, that is, May 7, 1968, from and after that date the School Land Commission could not approve loans for 4 1/2 per cent per annum but must approve them for S per cent according to the terms of said Senate Bill. You ask: "What is the effective date of Senate Bill No. 620, Second Session, 31st Oklahoma Legislature? "If Senate Bill No. 620 became effective on May 7, 1968, as an emergency measure, will the act be retroactive in effect upon the loan applications pending in the School Land Department upon said date?" Senate Bill No. 620, Second Session, 31st Oklahoma Legislature, provides in part as follows: "(c) All farm loans made by the Commissioners of the Land Office of the State of Oklahoma from the trust funds under their jurisdiction and control, as otherwise provided by the laws of this State, shall bear interest at the rate of five percent (5%) per annum, payable annually or semiannually, until paid; provided however, that all delinquent installments both principal and interest, shall bear interest at the rate of ten percent (10%) per annum until paid. . . . Provided, the entire amount of any loan shall be paid within a period of not to exceed thirty-three (33) years from the date of the loan . . . "(1) The terms and provisions of this Act providing for making of loans shall not prevent or prohibit the Commissioners of the Land Office from making loans which are approved prior to the date this Act becomes effective under the rules and regulations prescribed by the Legislature as existed on the date said loans were approved." Article V, Section 58 Oklahoma Constitution, provides in pertinent part as follows: "No act shall take effect until ninety days after the adjournment of the session at which it was passed, . . . unless, in case of emergency, to be expressed in the act, the Legislature, . . . so directs. . . . an emergency measure . . . shall not include . . . provision for the purchase or sale of real estate, nor the renting or encumbrance of real property for a longer term than one year. . . ." In the early case of Oklahoma City v. Shields, 22 Okl. 265, 100 P. 559, the Court was confronted with a paving act enacted in 1908 with the emergency clause attached. The paving act provided for the issuance of bonds which created a lien upon real property, and, in deciding the case the court said, "Under the paving act it is contemplated that the assessment should not be entirely discharged until 10 years have elapsed, and that during that time there shall be a continuing lien or incumbrance for the 10 several annual installments, except as the same may be discharged or paid off, upon the property affected. "We conclude that the act here in controversy, heretofore referred to as the `Paving Act', contemplates the incumbrance of real property for a longer term than 1 year, and did not become effective until 90 days after the adjournment of the Legislature, . . ." The Shields case above was followed by the Supreme Court in the case of In re Menefee, State Treasurer, et al., 22 Okl. 365, 97 P. 1014, and in the case of Riley v. Carico, 27 Okl. 33, 110 P. 738. In Menefee, the court said: ". . . In the case of an enactment . . . containing a provision for the purchase or sale of real estate or the renting or incumbering of real property for a longer period than one year, are not subject to an emergency, and in no event can go into effect until 90 days after the adjournment of the session of the Legislature at which they were passed. . . ." ArticleV, Section 58 of the Constitution of Oklahoma was applied to a subdivision of the state and in regard to tax deeds in the case of Harris et al v. Dungan, 199 Okl. 350,185 P.2d 949, where the court said: "But it is urged the 1939 resale act, supra, did not become effective until 90 days after the Legislature adjourned, although it was approved April 15, 1939, and contained an emergency clause; that the act was noneffective because of the provisions of Article 5, Section 58 Constitution of Oklahoma, which prohibits application of an emergency clause to provisions of statute relating to `the purchase or sale of real estate.' "It is clear that these provisions of statute are within the constitutional prohibition. Therefore, the act, insofar as it provides for the sale of real estate, was noneffective until 90 days after sine die adjournment of the Legislature." And the case of State ex rel. Williams, v. Newstadt et al., 149 P.2d 143 10th Circuit, which analyzes the cases on the subject, holds: ". . . The act, insofar as it provides for the sale of real estate, did not become effective until 90 days after the adjournment of the session of the Legislature." In the case of the State ex rel. Marland, Governor v. Phillips Petroleum Company, et al, 189 Okl. 629, 118 P.2d 621, both the majority and dissenting opinions agree that the emergency clause was ineffective within the purview of Article V, Section 58, Oklahoma Constitution. The 1937 Oklahoma Legislature enacted a law authorizing the Board of Affairs to communize certain State property for purpose of oil and gas exploration and the Governor approved the act with the emergency clause. Immediately thereafter and within the 90 day period, the Board of Affairs entered into contracts communizing said properties pursuant to the authority granted in the act. The Court in effect held that the effective date of the 1937 act, because of the constitutional inhibition contained in Article V, Section58 Oklahoma Constitution, was delayed until August 10, 1937. Inasmuch as the 1937 act created an incumbrance on State owned lands and would not therefore become effective until 90 days after the adjournment of the Legislature that passed it. Based upon the authorities cited above, it is the opinion of the Attorney General that Senate Bill No. 620, Second Session, 31st Oklahoma Legislature, will not become effective until 90 days after the adjournment of the Legislature. Since Senate Bill No. 620 is not yet effective and the Commissioners of the Land Office can still approve all of the pending applications at the 4 1/2% rate of interest provided in 64 O.S. 52 [64-52] (1967), it is unnecessary to answer your second question. (W. J. Monroe)