The Attorney General is in receipt of your request for an official opinion, wherein you pose the following question with respect to House Bill No. 1818, 2nd Session, 37th Legislature: "In light of the authority already existent in the Railroad Revitalization Act, is Section 3 of House Bill 1818 violative of the contemplation of the language of Article V, Section 58 of the Oklahoma Constitution, that 'An emergency measure . . . shall not include provision for the purchase or sale of real estate. . .'?" Section 1 of the Act appropriates to the State Department of Transportation from the General Revenue Fund "the sum of Twelve Million Dollars ($12,000,000.00), or so much thereof as may be necessary for acquisition and/or rehabilitation of railroad rights-of-way and trackage." Section 3 of the Act is an emergency clause. Article V, Section 58 provides: "No act shall take effect until ninety days after the adjournment of the session at which it was passed, except enactments for carrying into effect provisions relating to the initiative and referendum, or a general appropriation bill, unless in case of emergency, to be expressed by a vote of two-thirds of all members elected to each House, so directs. An emergency measure shall include only such measures as are immediately necessary for the preservation of the public peace, health or safety, and shall not include * * * provision for the purchase or sale of real estate * * *." Where an act is not of the class specially excepted from application of the emergency provision, the declaration of an emergency by the Legislature has been held conclusive on the courts. In re Menefee, 22 Okl. 365, 97 P. 1014 (1908). While House Bill No. 1818 is an appropriation bill, it is not the "general" appropriation bill, and thus, it is not within the excepted class. Attorney General's Opinion No. 79-311. 66 O.S. 304 [66-304] (1978) of the Railroad Revitalization Act, provides in pertinent part: "The Department (of Transportation) is hereby authorized and empowered: A. To acquire * * * railroad rights-of-way and trackage projects * * *." Thus, the statutory power for the Department of Transportation to acquire "railroad rights-of-way and trackage" was present in the law prior to the enactment of House Bill No. 1818. The power of the Department of Transportation to "acquire" rail properties was recognized in Attorney General's Opinion No. 79-299. Extensive research fails to disclose any Oklahoma cases dealing with the precise issue of whether an appropriation of funds may be a "provision relating to the purchase of real estate", within the meaning of Article V, Section 58 where such appropriation is for the purpose of executing the power to acquire or purchase property pursuant to pre-existing legislation. In State v. Neustadt, 149 F.2d 143 (CA10 Okl. 1945), and in Harris v. Dungan, 199 Okl. 350,185 P.2d 949 (1947), the United States Tenth Circuit Court of Appeals and the Oklahoma Supreme Court respectively, found that the attempted inclusion of an emergency clause in the 1939 Tax Resale Act violated Article V, Section 58's prohibition on attaching emergency measures to legislation relating to the purchase or sale of real estate. Neustadt found that the provisions of the 1939 act amending existing procedures governing tax resales were "within the range of the constitutional provision." Dungan similarly found: "It is clear that these provisions of statute are within the Constitutional prohibition." (Emphasis added) In State v. Phillips Petroleum Co., 189 Okl. 629, 118 P.2d 621
(1941), legislation empowering the State Board of Public Affairs to consolidate non-state owned tracts with a particularly described tract in an oil and gas lease, was held to violate Article V, Section 58's prohibition on emergency measures relating to the sale of real estate. Gayman v. Mullen, 58 Okl. 477, 161 P. 1051 (1916) found that Article V, Section 58's prohibition on emergency measures relating to the sale or purchase of real property embraced an act which authorized county commissioners to "acquire the right of way for any such drain or improvement by gift, grant, purchase or condemnation proceedings." 161 P. 1054. The act in question pertained to drainage districts organized by county commissioners. Gayman v. Mullen, supra, therefore recognizes legislation permitting a unit of government to acquire right-of-way for public improvements as being a "measure relating to the sale or purchase of real estate." The above cases indicate that the prohibition on emergency measures is to be applied to statutes relating to real estate transactions by the state or its instrumentalities and to statutes dealing with matters pertaining broadly to the sale or purchase of real estate generally. This is in accord with the rule that words in the constitution must be given their plain, natural and ordinary meaning, unless a contrary intent is indicated. Pawnee County Excise Board v. Kurn, 187 Okl. 110, 101 P.2d 614 (1940); Wimberly v. Deacon, 195 Okl. 561, 144 P.2d 447 (1944). 82 C.J.S., "Statutes," 404, p. 972, states: "The purpose of a constitutional provision postponing the effective operation of statutes, other than emergency acts, for a designated period after the adjournment of the legislative session in which such acts are passed is to inform the people of the contents of such acts before they become effective." Bryan v. Menefee, 21 Okl. 1, 95 P. 471, 475
(1908) explains the purpose of postponing the effective date of non-emergency measures for ninety days as allowing the people "an opportunity to invoke the referendum upon it." A referendum petition may be filed with the Secretary of State not more than ninety days after the adjournment of the Legislature which passed the bill upon which a referendum is demanded. Article V, Section 3. The "supreme legislative power of the state, including the power to reject legislative acts, is reserved to the people" by Article V, Section 1, Article V, Section 2 and Article V, Section 3. State v. Johnson, 90 Okl. 21,215 P. 945 (1923). Of course, the referendum power does not extend to emergency acts. In re Referendum Petition No. 1, Town of Haskell, 182 Okl. 419, 77 P.2d 1152 (1958). Reading Art. V, Section 58 together with Article V , Section 1, Article V, Section 2 and Article V, Section 3, it is evident that one purpose of prohibiting emergency measures relating to the purchase and sale of real estate was to permit the people time (ninety days) within which to initiate a referendum against this category of legislation. An additional purpose for this constitutional prohibition would be to allow sufficient time following the enactment of a bill relating to the purchase or sale of real estate for the provisions of it to become known, so as not to unduly interfere in the orderly prosecution of real estate transactions. The purpose of House Bill No. 1818 is to provide funds through the medium of legislative appropriation for the Department of Transportation to acquire and/or rehabilitate railroad properties. Since Attorney General's Opinion No. 79-299 limits "rehabilitation" to rail properties already in state ownership, House Bill No. 1818 must be viewed primarily as an appropriation to enable the purchase of rail properties by the state, and indeed rail properties are "real estate." Does the nature of the act as an appropriation measure take it outside the ambit of an act relating to the purchase or sale of real estate? We think not. The appropriation cannot be viewed in isolation from its intended purpose in determining whether it is a measure relating to the sale or purchase of real estate. It is the opinion of the Attorney General that an appropriation to a state agency for the purpose of purchasing real estate may not be made in an emergency measure without running afoul of Article V, Section 58. The right of the people to initiate a referendum petition against such legislation must be protected and preserved. Riley v. Carrico, 27 Okl. 33, 110 P. 738 (1910) holds that where an emergency has been declared without authority of law, the act, otherwise being valid, takes effect ninety days after the adjournment of the session of the Legislature at which it was passed. It is therefore the opinion of the Attorney General that House Bill No. 1818 will become effective upon the expiration of ninety days following the date of final adjournment of the Second Session of the 37th Oklahoma Legislature. It is the official opinion of the Attorney General that: 1. House Bill No. 1818's appropriation to the Department of Transportation of the sum of $12 million for the acquisition and/or rehabilitation of railroad rights-of-way and trackage is a "measure relating to the purchase or sale of real estate" within the meaning of Article V, Section 58 and therefore the purported declaration of an emergency in connection with said bill is a nullity; 2. House Bill No. 1818, 2nd Session, 37th Oklahoma Legislature, if otherwise valid, will become effective upon the expiration of ninety days following the final adjournment of said Legislative Session. (Floyd W. Taylor)