# HARLOW v. BOARD OF COM'RS OF PAYNE COUNTY *et al.*

No. 2136.   Opinion Filed July 23, 1912.

(125 Pac. 449.)

1.   **BRIDGES—Construction by Counties—Statutory Provisions.** In measuring the distance between the proposed location of a bridge to the nearest bridge on the same stream, to determine whether the proposed location is not nearer than six miles to the nearest bridge, as is required by section 7881, Comp. Laws 1909, the statute contemplates and requires that said measurement shall be upon a straight line between said points.

2.   **SAME—Authority of County Commissioners.** Under section 6 of an act of the Legislature of 1903 entitled "An act authorizing the construction of bridges" (Sess. Laws 1903, p. 246), as amended by section 3 of an act of the Legislature approved March 10, 1905 (Sess. Laws 1905, p. 354), where the bridge to be constructed is more than 200 feet in length, and crosses a stream that is the boundary line between two townships, the board of county commissioners is authorized to contract for the construction of such bridge only when the adjoining townships have offered and agree with the county to pay each one-half of one-fourth of the cost of construction of said bridge; and the board of county commissioners is without power, under said statute, to contract for the construction of such a bridge where the adjoining townships have offered to pay only one-third of one-fourth of the cost of the construction of said bridge, and an incorporated town in one of said townships offers to pay one-third of one-fourth of such cost.

3.   **COUNTIES—Remedies of Taxpayers—Existence of Remedy at Law.** A resident taxpayer may invoke the aid of a court of equity to enjoin the carrying out by a board of county commissioners of a void contract for the construction of a bridge, to be paid for in part by taxes levied upon the taxpayers of the county, although such taxpayers may have had the right of appeal to the district court from the order of the board of county commissioners, ordering the construction of such bridge.

(Syllabus by the Court.)

*Error from District Court, Payne County;*
*A. H. Huston, Judge.*

Action by George Harlow against the Board of County Commissioners of Payne County. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with instructions.

*Burford & Burford,* for plaintiff in error.

*D. W. Weldon,* Co. Atty., *C. H. Lowry, Robt. A. Lowry,* and *Burdick & Grubbs,* for defendants in error.

HAYES, J.    Plaintiff, a resident taxpayer of Payne county, brought this action in the court below to enjoin the board of county commissioners of that county from entering into and carrying out a contract for the construction of a certain bridge over a river in that county, and from levying a tax to raise funds to pay for the construction of the bridge, and to enjoin the county treasurer from extending such tax upon the tax rolls of the county, and from collecting same.    Upon the application of plaintiff the judge of the district court, at chambers, granted a temporary injunction, enjoining and restraining defendants in error from doing any of the aforesaid acts.    This temporary injunction was subsequently, upon motion of defendants in error, dissolved by the court; and it is from the order dissolving the injunction that this appeal is prosecuted.

Plaintiff in error, by his contentions in this court, presents for our consideration two legal propositions.    The first proposition urged is that the board of county commissioners are without authority to contract for the construction of the proposed bridge, because it is located within a distance of less than six miles of another bridge constructed across the same river, which is prohibited by section 2 of an act of the Legislature approved March 11, 1903 (Sess. Laws 1903, p. 244; section 7881, Comp. Laws 1909).    The proposed bridge is to be constructed at a point on the Cimarron river where said river forms the boundary line between Mound and Union townships, in Payne county. These two townships have agreed with the county to pay each one-third of one-fourth of the cost of construction of said bridge, and the town of Cushing, an incorporated town in one of said townships, has agreed to pay one-third of one-fourth of such cost, and the county is to pay the remaining three-fourths.    There has never been any agreement of the board of trustees of the adjoining townships to pay equally one-fourth of the expense of the construction of said bridge; and plaintiff's second prop-

osition is that, because of this fact, and by reason of section 6 of an act of the Legislature approved March 11, 1903 (Sess. Laws 1903, p. 246), as amended by section 3 of an act of the Legislature approved March 10, 1905 (Sess. Laws 1905, p. 354; section 7885, Comp. Laws 1909), the board of county commissioners is without authority to contract for the construction of the bridge. The act of the Legislature approved March 11, 1903, entitled "An act authorizing the construction of bridges" (Sess. Laws 1903, p. 244), provides for the construction and repairing of bridges across streams in the state where such bridges exceed the length of 200 feet between the banks of the stream on which any bridge is constructed. Section 2 of that act, which applies to the first proposition presented by plaintiff in error, reads as follows:

"Said bridges shall be located at any point on said river or rivers, provided no bridge shall be built on any such river under the terms of this act nearer than six miles to any other bridge located and built: Provided further, that more than one bridge may be built within one mile of an incorporated town or city."

It is admitted that there is no incorporated town or city within one mile of the location of the proposed bridge; and it is also admitted that upon a straight line, or by the course of the stream, it is less than six miles to another bridge upon said stream, but that by the usual traveled public road it is more than six miles to said bridge; and the board of county commissioners, construing the statute to mean six miles by the public highway, determined that it had authority to contract for the construction of the bridge. This construction of the statute by the board of county commissioners, we think, was incorrect. A somewhat similar question was considered in *City of Blackwell v. City of Newkirk*, 31 Okla. 304, 121 Pac. 260, where it is said:

"From an examination of the authorities we have been able to make, they appear to be practically in accord that, where distance is to be determined, it must be by a straight line, unless there is something in the nature of the case, or in the context of the act or instrument, indicating an intention to follow a different method."

The evident purpose of authorizing bridges to be constructed if not within six miles of each other, and prohibiting them from being constructed nearer than six miles to another bridge, is to provide for the construction of bridges at points upon any stream convenient to the traveling public coming from every direction to cross such stream; and at the same time to deny to the municipal authorities and to the board of county commissioners the power to burden the taxpayers by constructing too many bridges, or by constructing them nearer to each other than the reasonable necessity demands. It is urged by defendants in error that because a bridge constitutes a part of the road the act should be construed as requiring the measurement to be made by the road leading from one bridge to the other. In providing for the location of these bridges and the distance between them, the convenience of the traveling public residing upon the highway leading from one bridge to another was not in the minds of the Legislature; for, as a rule, the travel direct from one bridge to the next nearest bridge is of no great consequence, and rarely would there be a public highway leading direct from one bridge to the next nearest; for, in most instances, the greater part of the public travel will be across the river, rather than up and down its course. Measuring the distance between the bridges upon a straight line will result in a uniform system; one that will enable counties and municipalities therein to construct bridges to meet the reasonable wants of the traveling public, and at the same time protect against extravagance and the imprudent location of bridges in close proximity; for, if the distance is to be measured by the public road, it could and probably would not infrequently happen, on account of there being no public road upon a direct line, or upon an approximately direct line from the location of one bridge to the other, that the distance by traveled road would be greater than the limit fixed by the statute, and at the same time the bridges would be a very short distance apart. The same would result if the distance is to be measured by the course of the stream, where the stream is irregular and runs in curves. Two points upon a river more than six miles apart by public road today may be tomorrow, because of the opening of

new roads, less than six miles apart. A bridge when begun· may be without the limitations of the statute, but be within them when completed. There is nothing in the act to indicate that a different measurement than a straight line measurement of the distance is contemplated; and, if a measurement by the public highway is adopted, it will render it possible, in many instances, for the municipal authorities to defeat the very purpose of the limitation upon their power to construct these bridges, for the distance between any two points upon a stream can be made to vary by changing the highways; and, without reviewing the authorities cited in *City of Blackwell v. City of Newkirk, supra,* but referring to our discussion of a similar question in that case, and to the cases cited in that case, we hold that the statute here involved contemplates the measurement of the distance upon a straight line.

By act of the Legislature approved February 17, 1911 (Sess. Laws 1911, p. 41), section 2 of the act of 1903, *supra,* prohibiting the building of a bridge within six miles of another bridge upon the same stream, was repealed; but this repealing act was enacted several months after the order complained of herein was rendered in the court below, and after this appeal had been perfected. By reason of section 54, art. 5, of the Constitution, this repealing act therefore does not affect this proceeding.

It is also urged that the distance from the location of the proposed bridge to the nearest bridge is a question of fact which the board of county commissioners was empowered to determine; and that their determination cannot be reviewed in this proceeding. But, if any mistake was made by the board of county commissioners, it is not a mistake of fact, but a mistake in the construction of the statute defining its powers. The controversy revolves around what method of measuring the distance is contemplated and authorized by the statute. After the method of measurement is determined, there is no controversy about whether the construction of the proposed bridge is without or within the power of the board, except as that power is affected by the second proposition to be considered later. A board of county commissioners cannot misconstrue a statute as granting to it a power

not granted, and thereby foreclose the court from restraining it within the jurisdiction conferred upon it, when the application is made therefor by an injured party.

The statutory provisions bearing upon the second proposition are to be found in the act of the Legislature of 1903, as amended by the act of 1905, both of which acts have been referred to above. Section 4 of the act of 1903 authorizes the board of trustees of any organized township, with the consent of the board of county commissioners, to order the construction of bridges exceeding 200 feet in length across streams passing through such township, and authorizes the board of trustees to pay for the construction of any such bridge by drawing warrants on the road and bridge fund levied on all property in the township, or specially levied for the purpose of constructing said bridge. The same section also makes it the duty of the township board, when ordering the construction of any such bridge, to make, at the time it levies taxes in said townships, a special levy to pay for such bridge, which shall be in addition to the other taxes in the township, and which shall not exceed five mills on the dollar per year. By section 5 the township trustees are required, when they have determined that the construction of any bridge is necessary, and they have performed the acts provided by the statute, to certify such fact to the board of trustees of any incorporated town or city in the township directly interested in the construction of said bridge; and it is made the duty of the board of trustees of said city or town thereupon to make a special levy to pay for said bridge, which shall be in addition to all other taxes in such incorporated town or city, and which shall not exceed five mills per year, and also makes it the duty of the township board to certify its acts to the board of county commissioners; whereupon the board of county commissioners, if it deems the bridge necessary and approves its construction, shall proceed to offer for bids and let the contract for its construction, two-thirds of the cost of the bridge to be paid by the organized townships, and one-third to be paid by the county. The bridge must be built under the supervision of the county commissioners, and it is to be and remain the property of the county. This section

·of the act was amended by the act of 1905; but it is not necessary to notice the changes effected by the amendatory act. Section 6 of the act of 1903 reads as follows:

"When any stream requiring a bridge of over two hundred feet or more in length as contemplated in this act is the boundary line between two townships in the same county, then it shall be necessary for the board of township trustees of each township bordering on said stream to join in the construction of said bridge as herein provided, and to bear equally the two-thirds of the expense of construction of said bridge as herein provided, and to pay for the same as herein provided, the remaining one-third to be paid by the county and said bridge to be constructed by the board of county commissioners if said board finds the bridge necessary and approves its construction, and to remain the property of the county as provided in this act."

This section was amended by section 3 of the act of 1905 (Sess. Laws 1905, p. 354); but the only change made by the amendatory act is in the portion of the cost of the bridge that shall be paid by the county, and the portion that shall be paid by the adjoining townships. Neither the act of 1903 nor the amendatory act of 1905 contains any special procedure to be followed by the board of township trustees in ordering the construction of bridges authorized by section 6 of the act of 1903, as amended by section 3 of the act of 1905; but by the provisions of said section 6, as amended, to the effect that, in order for such bridge to be constructed, "it shall be necessary for the board of township trustees of each township bordering on said stream to join in the construction of said bridge *as herein provided,* and to bear equally one-fourth expense of such construction of said bridge *as herein provided,* and to pay for the same *as herein provided* * * *" (italics ours), it was intended to provide that the townships, for the purpose of constructing any bridge under this section, should follow the same procedure as is prescribed for the construction of a bridge by an organized township under section 3, where the bridge is to be constructed across a stream within a township. That procedure requires that, before the board of county commissioners can act and order the construction of a bridge, the board of trustees of the organized townships must agree and offer to pay equally one-fourth of the cost of construc-

tion of said bridge, and in paying same shall issue their warrants. therefor, to draw six per cent. interest from the date of their issue; that when ordering the construction of the bridge they shall, at the time of levying taxes in the townships, make a special levy to pay for said bridge. These acts shall be certified by the township trustees of the townships to any incorporated city or town in the townships directly interested, who likewise shall make a special levy; and all these acts of the boards of trustees of the two townships must be certified by said boards to the county commissioners, who will then be authorized to act. What portion of the expense of construction of these bridges the incorporated towns and cities in the bordering townships are required to aid the townships with and to bear is not here necessary to determine. It is apparent from the statute that the county deals only with the townships. There is no provision for incorporated towns. and cities to certify anything to the board of county commissioners. It is the townships that must order the construction of the bridge and agree to pay the portion required by the statute, and to provide for payment thereof. There is no provision in the statute that authorizes any agreement between the county and any incorporated town or city for the payment of any portion of this cost. It is the board of trustees of the townships that deals with incorporated cities and towns, and they are authorized to deal only with the board of county commissioners. In the instant case no offer has been made by the boards of trustees of the two townships to pay that part of the cost of constructing the bridge the statute requires; nor has it been certified to the board of county commissioners that all the acts required by the statute of the township boards have been performed. In lieu thereof, it is sought to have the bridge constructed upon the offer of each of the two townships to pay less. than the part required by the statute to be paid by them, because an incorporated town offers, also, to pay a part.

"It is a settled rule that the grant of powers to boards of county commissioners must be strictly construed, because when acting under special authority they must act strictly on the conditions under which the authority is given; that they can exercise only such powers as are specifically granted, or as are incidentally

necessary for the purpose of carrying into effect such powers; and, where the law prescribes the mode which they must pursue in the exercise of such powers, it, as a rule, excludes all other modes of procedure." (*Allen et al. v. Board of County Commissioners of Pittsburg County*, 28 Okla. 773, 116 Pac. 175.)

At the same term of the Legislature at which the act of 1903, heretofore construed, was enacted, and just six days thereafter, there was enacted and approved an act of the Legislature entitled "An act relating to roads and bridges, etc." Chapter 29, Sess. Laws 1903, p. 236. Section 3 of that act reads as follows:

"The board of county commissioners in each county shall have sole control of all bridges more than twenty feet long, and shall contract for the erection and maintenance of the same as hereinafter provided. The board of county commissioners may in their discretion enter into an agreement with any township board within said county whereby money may be appropriated from the county road and bridge fund for the purpose of constructing or improving any road or bridge in said township, or on any boundary line of said township. Any incorporated city or town may appropriate funds to aid the township or county in the construction or improvement of any road or bridge in such county."

There is nothing, however, in this section that conflicts with the provisions of the act of the same Legislature, heretofore construed, and as amended by the act of 1905. The foregoing section of the statute confers upon the board of county commissioners of each county sole control of all bridges more than 20 feet long, and power to contract for the erection and maintenance thereof. The act of March 11, 1903, as originally enacted, or as amended, does not take away from the board of county commissioners control of any bridge whatever, nor deny it the right to contract for the erection thereof, nor release it from the maintenance of same. Said act attempts only to prescribe the procedure by which certain bridges may be constructed; and section 3 thereof, just quoted above, does not authorize the board of county commissioners to make any contract with any incorporated city or town for the construction of any bridge. The sole power conferred upon it, relative to the construction of bridges jointly with any other authority, is that the commissioners "may in their

discretion enter into an agreement with any township board within said county. * * * " Incorporated cities and towns are authorized to aid any township of a county in the construction of any bridge or road by appropriating funds for that purpose; that is, in order to induce the county to construct or repair bridges or roads, or to induce a township to do so (either alone or upon agreement between the board of county commissioners and a township board), an incorporated city or town may donate to the county or township any fund to aid in its bearing its portion of the expense of such improvement. But the agreement for the construction of a bridge, either in a township, or on any boundary line thereof, must be between the board of county commissioners and the township.

Defendants urge that plaintiff's action for an injunction will not lie, because he has a speedy and adequate remedy at law by an appeal from the action of the board of county commissioners to the district court. In support of their contention that plaintiff has such right of appeal, defendants cite and rely upon section 1690, Comp. Laws 1909, as construed in *Smith et al. v. Board of County Commissioners of Rogers County,* 26 Okla. 819, 110 Pac. 669. The decision in the last-mentioned case was made by this court without considering, and without having our attention called to, *Cummings v. Bd. of County Commissioners of Noble County,* 13 Okla. 21, 73 Pac. 288, with which it seems to be in some respects in conflict; but, if we assume in the present case that plaintiff has the right of appeal, still he may maintain this action. The board of county commissioners, for the reasons already stated, in contracting for the construction of the bridge, has acted without authority, and its act in attempting to carry out this contract, and to levy a tax for that purpose upon the taxpayers of the county, is illegal and void; and it may be restrained from carrying out this void contract by an injunction, without resort to the remedy of appeal. *Harney v. Indianapolis, Crawfordsville & Danville R. R. Co. et al.,* 32 Ind. 244; *Fremont County v. Brandon,* 6 Idaho, 482, 56 Pac. 264; *Dunbar v. Bd. Com'rs of Canyon County,* 5 Idaho, 407, 49 Pac. 409; *Fones Bros. Hdw. Co. v. Erb et al.,* 54 Ark. 645, 17 S. W. 7, 13 L. R. A. 353. And

plaintiff, being a resident taxpayer, may invoke the aid of a court of equity to prevent the illegal creation of the debt for the construction of the bridge, and of the illegal disposition of the money in the payment of such debt. *Hannan v. Bd. of Education of City of Lawton et al.,* 25 Okla. 372, 107 Pac. 646, 30 L. R. A. (N. S.) 214; *City of El Reno et al. v. Cleveland-Trinidad Paving Co.,* 25 Okla. 648, 107 Pac. 163, 27 L. R. A. (N. S.) 650; *Bowles v. Neely et al.,* 28 Okla. 556, 115 Pac. 344.

It follows that the judgment of the trial court must be reversed and the cause remanded, with instructions to proceed in accordance with the views expressed in this opinion.

TURNER, C. J., and WILLIAMS, KANE, and DUNN, JJ., concur.