## GREEN et al. v. BOARD OF COM'RS OF LINCOLN COUNTY et al.

No. 18311. Opinion Filed July 26, 1927.

Rehearing Denied and Dissenting Opinion Filed Sept. 20, 1927.

(Syllabus.)

Statutes—Validity of County Highway Improvement Bonds Unaffected by Statute Changing Law Approved by Governor on Day of Bond Election.

Where the board of county commissioners, by resolution and notice, cause an election to be called at which county bonds for road improvements are voted, and, by the required majority of the voters of the county, such bonds are declared carried, and, on the afternoon of the day on which said election is held, after most of the votes on the question have been cast, the Governor approves a measure passed by the Legislature which amends or repeals the law under which the bonds are voted, the steps thus taken will be considered a "proceeding begun by virtue of such repealed statute" as contemplated in section 54, art. 5 of the Constitution of Oklahoma, and the issuance and sale of such bonds are governed by the law existing prior to such amendment or repeal.

Error from District Court, Lincoln County; Hal Johnson, Judge.

Action by J. W. Green and Hugh Dean

against the Board of County Commissioners of Lincoln County et al. Judgment for defendants, and plaintiffs appeal. Affirmed.

W. L. Johnson, M. A. Cox, R. R. Rittenhouse, W. G. Wilson, Fred Brown, H. M. Jarrett, and Andrews & Andrews, for plaintiffs in error J. W. Green and Hugh Dean.

Erwin & Erwin, Courtland M. Feuquay, W. L. Johnson, Ira E. Billingslea, W. E. Wells, and J. B. Dudley, for plaintiffs in error P. D. Erwin et al., interveners.

Bierer & Bierer, for plaintiffs in error D. W. Norris et al., interveners.

Roscoe Cox, Co. Atty., for defendants in error.

E. A. Foster, James A. Embry, and Freeling & Box, for defendant in error M. E. Trapp, intervener.

PHELPS, J. On the 29th day of March, 1927, pursuant to resolution and notice theretofore given by the board of county commissioners of Lincoln county, an election was held at which there were 7,748 votes cast in favor of, and 1,339 votes against the issuance of $1,200,000 negotiable coupon bonds bearing interest at the rate of 4 ¾ per cent. per annum, payable semi-annually and maturing in equal installments in 5, 10, 15, 20, and 25 years, respectively, such bonds being voted for the purpose of improving certain designated highways in Lincoln county. The bond issue having been declared carried, the board of county commissioners, on April 4, entered into a contract with former Governor M. E. Trapp to sell said bonds to him for par, accrued interest and premium of $1,200: whereupon plaintiffs in error, resident taxpayers, filed their petition in the district court of Lincoln county praying for an injunction against the issuance and sale of such bonds.

Upon trial judgment was rendered denying the injunction, to reverse which this appeal is prosecuted.

It appears that in the calling and conduct of the election and in contracting for the sale of the bonds in question the board of county commissioners, defendants in error here, proceeded under law in force prior to the convening of the eleventh session of the Legislature. The Eleventh Legislature, in what is termed "Senate Bill No. 87" (chap. 22, Session Laws 1927), passed an act which amended if not repealed, the law theretofore existing governing the manner of holding elections for the purpose of voting, issuing, and selling of bonds such as were voted at this election, and this act was approved by the Governor at 4:10 p. m. on March 29, 1927, the day the election was held to vote the bonds in question.

This act carried the "emergency clause," and it is the contention of plaintiffs in error that it became effective immediately upon its approval by the Governor, and that, while the election was conducted under and the bonds voted in pursuance of the provisions of the law existing before the passage of Senate Bill No. 87, since this measure went into effect on the day the election was held, the issuance and sale of the bonds must be governed by the provisions of said Senate Bill No. 87.

There is one group of interveners herein who make the same contention, while another group of interveners take the position that the bonds are invalid for the reason that neither the provisions of the old nor new law were complied with in the election and the issuance and sale of the bonds; while intervener M. E. Trapp, proposed purchaser of the bonds, contends that Senate Bill No. 87 is void and that the provisions thereof have no application whatever to either the election or issuance and sale of the bonds, but that he is entitled to enforce his contract for the purchase of the bonds under the provisions of the statute existing before the passage of Senate Bill No. 87. The board of county commissioners, defendants in the court below and defendants in error here, contend that, inasmuch as the election was called and conducted under the provisions of the law existing before the passage of Senate Bill No. 87, the issuance and sale of the bonds must be governed by the law in force at the time the proceedings were commenced, and that the provisions of Senate Bill No. 87 apply neither to the election nor to the issuance and sale of the bonds.

The various parties to this action have presented herein many questions affecting this bond issue. They are represented by an unusual array of able counsel and have favored us with exhaustive briefs and arguments, many of which questions, however, and much of the argument presented being of a highly technical character, and will say, at the outset, hoping not to be understood as being unduly critical, that we see no merit in many of the propositions urged and contentions made and can see no good reason why we should use time and space in disposing of them.

A careful reading of section 26 of article 10 of the Constitution and sections 10087

and 10088, C. O. S. 1921, and chapter 48 of the Session Laws of 1924—and particularly section 23 thereof—together with Mayberry v. Gaddis, 88 Okla. 286, 213 Pac. 316, and Franklin v. Ryan, 125 Okla. 161, 256 Pac. 932, in our judgment, furnishes a sufficient answer to most of the questions here raised.

As we view it, the sole question for us to determine is, whether the county commissioners were legally authorized, in the issuance and sale of the bonds in question, in following the law as it existed prior to the passage and approval of Senate Bill No. 87, or whether they are circumscribed in the issuance and sale of such bonds by the provisions of that act.

According to the provisions of Senate Bill No. 87, bonds such as were here voted by the citizens of Lincoln county shall mature in annual installments, beginning not less than three nor more than five years after their date. The act further provides that before the bonds are sold at least ten days, notice must be given of the time and place when and where bids will be received, and that each bidder for the bonds shall submit, with his bid, cash or its equivalent equal to two per cent. of his bid, and the bidder shall stipulate the lowest rate of interest which such bonds shall bear.

It will be observed that there is a material difference between the provisions of Senate Bill No. 87 and the proposition on which the voters of Lincoln county voted. They voted on a bond issue which was to mature in five installments, five years apart, the first of which was to be five years from the date of issuance; whereas Senate Bill No. 87 provides that they shall mature in annual installments, 'such maturity beginning not less than three years from their date. Senate Bill No. 87 provides that the rate of interest to be borne by the bonds shall be determined by the bidder, while the rate of interest was fixed in the proposition here voted on at 4¾ per cent. It will thus be seen that it would be impossible for the board of county commissioners, in the issuance and sale of the bonds, to comply with the provisions of Senate Bill No. 87 and at the same time follow the direction given them by the voters who expressed their desires at the polls.

Section 54 of article 5 of the Constitution of Oklahoma provides that:

"The repeal of a statute shall not revive a statute previously repealed by such statute. nor shall such repeal affect any accrued right, or penalty incurred, **or proceeding begun by virtue of such repealed statute"**

—and it is contended by defendants in error, and their view seems to have been sustained by the district court of Lincoln county, that the issuance and sale of these bonds constituted a "proceeding" commenced before the repeal of the law within the contemplation of this section of the Constitution.

In re Application of State to Issue Bonds, 40 Okla. 145, 136 Pac. 1104, was a proceeding instituted in the district court of Oklahoma county by the Governor, Secretary of State, and Treasurer for the purpose of determining the existence, character, and amount of legal outstanding warrant indebtedness of the state with a view to issuing funding bonds. Protests against this proceeding were filed. It was claimed that the adoption on May 17, 1913, of the revised and annotated laws, commonly referred to as the Harris-Day Code, had the effect of repealing the statute under which the proceeding was commenced, and the court there held that what had been done constituted a "proceeding" and was protected and preserved by section 54 of article 5 of the Constitution.

A somewhat similar question was before this court in Gayman v. Mullen, 58 Okla. 477, 161 Pac. 1051, and was there so thoroughly discussed and the authorities cited and quoted from, by Mr. Justice Thacker, that we here, in the interest of brevity, refer to and adopt that opinion in so far as the facts there are applicable here.

If the voting, issuance, and sale of the bonds in question can be termed a "proceeding," as contemplated by section 54, article 5 of the Constitution, then it is clear that Senate Bill No. 87 has no application and the county commissioners are justified and authorized to issue and sell the bonds according to their contract with M. E. Trapp.

Bouvier's Law Dictionary (Rawles 3rd Ed.) vol. 3, p. 2730, defines a proceeding as follows:

"In its general acceptation, the form in which actions are to be brought and defended, the manner of intervening in suits, of conducting them, the mode of deciding them, of opposing judgments, and of executing. * * *

"In U. S. v. Bell, 81 Fed. 830, the question was suggested whether proceedings before pension commissioners are judicial proceedings within the meaning of R. S. sec. 860, which provides that evidence obtained from a party or witness shall not be used against him in any criminal proceeding. The court passed the question without deciding

it, though apparently inclined to the affirmative."

In 32 Cyc. 406, "proceeding" is defined as follows:

"In its general acceptation, an act which is done by the authority or direction of the court, express or implied; an act necessary to be done in order to obtain a given end; a prescribed mode of action for carrying into effect a legal right; performance of an act, wholly distinct from any consideration of an abstract right; the form and manner of conducting judicial business before a court or judicial officer; regular and orderly progress in form of law; including all possible steps in an action, from its commencement to the execution of judgment. * * *"

In Board of County Commissioners v. Cypert, 65 Okla. 168, 166 Pac. 195, in the syllabus this court said:

"Boards of county commissioners in this state necessarily exercise quasi judicial power, arising from the discharge of their duties and inherent in the nature of their office. * * *

"A 'quasi judicial power' is one imposed upon an officer or a board, involving the exercise of discretion, judicial in its nature, in connection with and as incidental to the administration of matters assigned or intrusted to such officer or board. * * *"

In the light of these authorities we cannot agree with the contention of learned counsel who argue in their briefs that what was done in the instant case does not constitute a "proceeding" within the contemplation of the section of the Constitution above quoted, and, having reached the conclusion that the proceeding having been commenced under the law as it existed prior to the approval by the Governor of Senate Bill No. 87, we must necessarily conclude that the proceeding was governed entirely by the law as it existed prior to the passage and approval of Senate Bill No. 87.

In other words, when the board of county commissioners, by their resolution and notice, put the machinery in motion to vote the bonds in question, they began a "proceeding," and such proceeding was not or will not be terminated until the final object of the "proceeding" has been accomplished, to wit, the sale of the bonds; and in accomplishing this the law, as it stood upon the statute books of the state at the time the proceeding was commenced defines their duties and limits their authority.

A thorough examination of the records, briefs, and authorities cited brings us to the conclusion that the bonds were properly voted, and when issued and delivered to the proposed purchaser, as per the conditions of the contract entered into between the board of county commissioners and such purchaser, they will be, in all respects, valid and a binding obligation upon the county.

The judgment of the district court is therefore affirmed.

BRANSON, C. J., and HUNT, CLARK, RILEY, HEFNER, and HARRISON, JJ., concur.

———

RILEY, J. (dissenting). I dissent to the order of the court denying petition for rehearing herein.

Here is presented the validity of a bond issue of $1,200,000, for the purpose of improving, as stated in the opinion, "certain designated highways in Lincoln county." It is further stated in the opinion:

"As we view it, the sole question for us to determine is, whether the county commissioners were legally authorized, in the issuance and sale of the bonds in question, in following the law as it existed prior to the passage and approval of Senate Bill No. 87, or whether they are circumscribed in the issuance and sale of such bonds by the provisions of that act."

So, then, the single proposition of the applicability of Senate Bill No. 87 was considered by the court, and all other propositions duly submitted were left undecided, and untouched, unless it be considered that they were approached by reference to opinions cited. They cannot be considered decided by reference when the opinion sets out the "sole question for us to decide." Nowhere in the opinion can it be said that the question duly submitted was decided, to wit, the authority of counties to vote bonds and to issue negotiable coupon bonds for building and constructing permanent county roads, as distinguished from state roads. The county has no inherent authority to issue such bonds. Section 10087, et seq, Compiled Oklahoma Statutes, 1921, refers to state roads, and chapter 48, Session Laws 1924, section 8, makes a distinction between state and county highways. The case of Mayberry v. Gaddis, 88 Okla. 286, 213 Pac. 316, cited, refers to a bond issue to build state roads, but says:

"The bond issue can be voted only for constructing permanent state roads, but there is no requirement of law that such designation should precede the election."

Franklin v. Ryan, 125 Okla. 161, 256 Pac. 932, cited, holds legal, under chapter 48, Session Laws 1924, an additional tax levy for county highway funds, but does not touch such a bond issue.

Reference in the opinion is made to section 23, chapter 48, Session Laws 1924, the repealing clause and a proviso that in all places in the road and bridge statutes of 1921—compilation of Session Laws 1923—where the words "state roads" or "state highways" are used, the same shall be used to mean "county roads" or "county highways." Can such a radical amendment of the road laws be effected under the guise of a construction, and thus govern the issuance of bonds theretofore without authority of law, and without suggestion or mention in the title to the act? It seems to me this court decided that matter in Ex parte Masters, 126 Okla. 80, 258 Pac. 861, when this court spoke in an opinion per curiam by Chief Justice Branson. Nowhere in the opinion can it be ascertained that the cause concerned a **county highway.** The opinion spoke of "**certain designated highways.**"

The question of issuing bonds to mature in five-year serials and not in one-year serials, as required by Senate Bill No. 87, and as required by section 10087, Compiled Oklahoma Statutes, 1921, was before the court, but the opinion does not include the matter in the "sole question" determined, but directs the litigants to seek light in the cited authorities.

No oral argument was had prior to the judgment, opinion and decision, though the same was requested in due time and form, and the eminent counsel, Judge Bierer. contends that he has not waived that right either by act, word, or deed.

I consider the numerous matters duly submitted, only a few herein mentioned. and not passed upon by the court, of vital importance to the citizenship of this state, especially those whose property is to answer for this bonded indebtedness, and. therefore, after hearing argument on rehearing, I desire to dissent from the opinion.

Note.—See 15 C. J. p. 617, §328; 36 Cyc. p. 1225.