**In re APPLICATION OF BOARD OF EDUCATION OF WESTERN HEIGHTS INDEPENDENT SCHOOL DISTRICT NO. 41, OKLAHOMA COUNTY, Oklahoma, for Validation of $2,400,000 in School Building Bonds and Results of the Election Authorizing the Issuance Thereof.**

No. 50829.

Supreme Court of Oklahoma.

June 9, 1977.

Floyd, Brandenburg & Rogers by Glenn E. Floyd and Lynn C. Rogers, Norman, for applicant, Board of Education of Western Heights Independent School District No. 41.

BARNES, Justice:

This is an original action in the form of an Application to Assume Original Jurisdiction and for the approval of $2,400,000 school bonds to be issued by Applicant, Board of Education of Western Heights Independent School District No. 41, Oklahoma County, Oklahoma, and for validation of the election authorizing issuance of said bonds.

Applicant Board is a public body and the governing board of the subject school district, whose members are duly qualified, elected, and acting, pursuant to 70 O.S.1971, §§ 1–115, 5–106, et seq. By resolution adopted December 6, 1976, Applicant authorized the calling and holding of an election in Independent School District No. 41 for the purpose of submitting to the qualified electors the question of the issuance of bonds to provide funds for the purpose of constructing two new buildings, a gymnasium and an auditorium.

Between December 6, 1976, and January 25, 1977, the issue was widely publicized in the community through newspaper articles, brochures distributed to voters and school patrons, articles in the newsletter of the Superintendent of Schools, and in various public meetings, explaining in detail the proposed new gymnasium and auditorium, their cost, the need for them, the method of financing, and soliciting voter approval.

The election was conducted January 25, 1977, after publication of the proclamation and notice of election and compliance with all other applicable provisions of Oklahoma law in effect prior to January 1, 1977. The question passed by a majority in excess of the required three-fifths, to-wit, by a vote of 502–51, amounting to approval by a 90.7 per cent majority of the votes cast in favor of issuance of the bonds and levying tax sufficient for their repayment.

Pursuant to the election, Applicant adopted a resolution authorizing the sale of the bonds and caused a notice of sale to be published as required by law. Applicant determined the lowest and best bid to be within required limits, and entered into a contract with the successful bidder, Guaranty Bank and Trust Company, Oklahoma City, Oklahoma, hereinafter referred to as "purchaser bank", upon the fulfillment of the terms as set out in the contract and bid for the purchase of said bonds. That contract was entered into contingent upon approval by the Attorney General and an opinion of legality by bond counsel for the purchaser bank.

Upon first examination of the transcript of bond proceedings, by attorneys for the purchaser bank, it was discovered and pointed out to Applicant that certain variations existed between the manner in which the election was conducted and provisions of the Oklahoma Bond Issue Proceeds Act, 62 O.S., § 571 et seq. (1976 Supp.). In the notice of election and in the proposition printed on the ballot, no specification was made that at least 70% of the proceeds would be used for certain named projects, nor were the specific projects set out with a dollar amount listed for each, as required by the Act.

The Oklahoma Bond Issue Proceeds Act became effective January 1, 1977, prior to the time of the election herein. The Act, by its terms, was intended to assure citizens that proceeds of bond issues approved by them will be expended only for the purposes or projects for which the issue was approved. Applicant's petition alleged its failure to follow the Act resulted from an omission to include in the notice and in the proposition printed on the ballot a specification that seventy per cent (70%) of the proceeds should be expended for a new gymnasium and an auditorium and a listing of the dollar amounts to be expended on each. The petition stated such variance was a result of inadvertence and oversight of the Applicant's attorney.

At a regular meeting held March 7, 1977, Applicant passed a resolution binding itself to expend at least 70% of the proceeds of

the $2,400,000 bond issue for the construction of two school buildings at a cost of $1,200,000 each, and further binding itself to expend such bond proceeds in compliance with all the provisions of 62 O.S.1976 Supp., §§ 571–577.

Subsequent to execution of the bond purchase contract between Applicant and the purchaser bank, a transcript of the proceedings was submitted to the Attorney General's office. On April 1, 1977, the Attorney General, acting as Ex-Officio Bond Commissioner, certified the validity of the obligations as provided in 62 O.S.1971, §§ 11–14, which started the running of the 30-day period of contestability.

Attorneys for the purchaser bank have examined the transcript and have declined to accept the bonds as valid and legal because of variances from 62 O.S.1976 Supp., § 571 et seq., until this Court declares said securities to be lawful and valid obligations of Applicant School District No. 41.

Thus, Applicant asks this Court to assume original jurisdiction and determine the validity of the indebtedness and of the proceedings connected with the issuance of the bonds to assure prompt, lawful and proper acceptance of the bonds by the purchaser bank, and to eliminate the possibility of challenges to the validity on constitutional grounds, outside the scope of the incontestability statute.

Applicant first urges this Court to assume original jurisdiction of this matter under Article VII, Section 4, Oklahoma Constitution, which provides original jurisdiction of the Supreme Court extends to a general superintending control over all inferior courts and all agencies, Commissions and Boards created by law. Applicant Board of Education exists pursuant to 70 O.S.1971, §§ 1–115, 5–106, et seq., and is clearly a Board created by State law subject to general superintending powers of this Court.

While there is no statute specifically authorizing this Court to validate school bonds issued by independent school districts as there is for validation of other indebtedness, such as 70 O.S.1971, § 4011, for bonds issued by the State Board of Regents, no law precludes such validation by this Court. Applicant urges the passage of § 4011, supra, indicates the intent of the Legislature that the Supreme Court should undertake to determine the validation of bonds for education in original jurisdiction actions and that it could be inferred that validation of bond issues of local school districts in proper cases would be a proper subject for original jurisdiction.

■ Applicant further argues that the 30-day period of contestability under 62 O.S.1971, § 13, which begins to run upon certification by the Attorney General of the validity of bond proceedings, does not apply to situations where validity of the bonds is challenged on constitutional grounds. Therefore, it is urged that to resolve the question of the lawfulness of the proceedings, this Court should make a determination of the validity of the subject indebtedness. Applicant additionally argues the Court should assume jurisdiction because the case involves questions of substantial public concern. Because we find this to be a matter of substantial public concern and involving a constitutional question, we assume jurisdiction.

Applicant concedes the published notice of election did not contain reference to use of 70% of the proceeds in the two specific construction projects. From our examination of the evidentiary material distributed to district voters, we do not find that there was any compliance, however minimal, with the requirements of the Bond Issue Proceeds Act.

The question then becomes whether, under Article V, Section 54, of the Oklahoma Constitution, a school bond election *called* prior to the effective date of the Bond Issue Proceeds Act, but *held* after the effective date of the Act, is effective to authorize the lawful issuance of school bonds when the notice given did not include the specifications required under the Act.

Applicant urges that since the instant proceedings were begun prior to January 1, 1977, under Article V, Section 54, of the

Oklahoma Constitution, the Bond Issue Proceeds Act is not applicable to the present situation. Therefore, Applicant contends any compliance with the Act is immaterial with respect to the validity of the bond issue and supportive proceedings.

Article V, Section 54, Oklahoma Constitution, provides:

"§ 54. Repeal of statute—Effect.— The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or *proceedings begun by virtue of such repealed statute.*" (Emphasis added)

Applicant cites a number of cases indicating that this section applies not only to situations where previous statutes have been expressly repealed, but also to repeal by implication. *Aldridge Hotel Co. v. Mainard*, 171 Okl. 422, 43 P.2d 738 (1938).

Under Article V, Section 54, supra, Applicant argues that in the context of bond proceedings the phrase " . . . proceedings begun by virtue of such repealed statute" clearly includes situations where bond elections are called or held under authority of previously existing statutes and there is a change in law before the bonds are finally issued. In support of this position, Applicant relies primarily on *Green v. Board of Commissioners of Lincoln County*, 126 Okl. 300, 259 P. 635 (1927), urging it is dispositive in the instant case. In *Green*, the County Commissioners had called an election for authority to issue county bonds for road improvements under provisions of the then existing law. The proposition carried by the requisite majority, but on the afternoon of the election day the Governor signed into law a bill which in part amended and repealed the law under which the bonds were voted. The Oklahoma Supreme Court in that case upheld the validity of the issuance and sale of the bonds under provisions of the prior law, relying upon Article V, Section 54, of the Oklahoma Constitution.

The Court, in *Green, supra*, adopts the applicable portions of its earlier opinion in *Gayman v. Mullen*, 58 Okl. 477, 161 P. 1051 (1916), which held that "proceedings begun" included the appointment of appraisers by a Board of County Commissioners under authority of a statute repealed shortly thereafter. The Court therein ratified the special assessment, though neither the appraisal nor action by the County Commissioners was completed until after the new statute became effective.

The *Green* court, in considering the term "proceedings begun" and in construing Article V, Section 54, supra, noted:

"In other words, when the board of county commissioners, by their resolution and notice, put the machinery in motion to vote the bonds in question they began a 'proceeding,' and such proceeding was not or will not be terminated until the final object of the 'proceeding' has been accomplished, to wit, the sale of the bonds; and in accomplishing this the law, as it stood upon the statute books of the state at the time the proceeding was commenced, defines their duties and limits their authority."

■ We think the calling of the election herein can be termed a "proceeding begun" pursuant to Article V, Section 54, supra.

■ From our examination of the briefs and authorities cited, we conclude that, since the proceedings had begun at the time the Bond Issue Proceeds Act, supra, became effective (January 1, 1977), the said Act was not applicable to this bond issue.

The Application of the Applicant for validation of $2,400,000 in school building bonds and results of the election authorizing the issuance thereof is granted.

All the Justices concur.