**PRUDENTIAL PROPERTY AND CASUALTY COMPANY, et al., Appellants,**

**v.**

**Gerald GRIMES, Insurance Commissioner, State of Oklahoma, Appellee.**

**No. 66589.**

Supreme Court of Oklahoma.

June 12, 1986.

Rehearing Denied Oct. 7, 1986.

Ben L. Burdick, Harvey D. Ellis, Jr. and Gayle Barrett, Crowe & Dunlevy, Oklahoma City, for appellants.

Michael C. Turpen, Ned Bastow and Susan Brimer Loving, Atty. Gen., Oklahoma City, for appellee.

SUMMERS, Justice.

Plaintiffs are fifty out-of-state insurance companies who have challenged Oklahoma's gross premium tax laws on the basis that they deny plaintiffs equal protection of the law. Plaintiffs commenced this action in 1981, and since that time have followed the statutory procedures for a constitutional challenge to the taxes as set forth in 62 O.S. 1981 § 206. Section 206 provides that taxes alleged to be unconstitutional shall be paid under protest to the collecting officer (here the Insurance Commissioner) with notice in writing stating the grounds for the complaint and that suit will be brought to recover the taxes so paid. The statute then provides:

> "It shall be the duty of said officer to deposit said fees or taxes to his credit in a *special trust fund* in his depository account in the State Treasury to be known as his 'protest Fund' and to retain the same therein for a period of sixty (60) days, and if within such time summons shall be served upon him in a suit for the recovery of said fees or taxes or a specified part thereof he shall further so *retain the fees or taxes sued for until the final determination of the suit,*...." (Emphasis supplied.)

In the event plaintiffs prevail, § 206 further provides for a judgment accompanied by a court order directing the collecting officer "to pay the amount of said judgment by voucher ... from his said protest fund to the plaintiff."

Over $55 million which was paid by these plaintiffs under protest and deposited in the Insurance Commissioner's Protest Fund in these actions has been transferred to the Department of Human Services and the Office of Public Affairs, through special legislative acts purporting to authorize such transfers by the Insurance Commissioner. Approximately $13 million in interest on such monies has been transferred from the Protest Fund into the General Revenue Fund. There are present legislative plans to direct the transfer of an additional $42 million out of the Insurance Commissioner's Protest Fund, in order to set off shortfalls in planning the budget for the 1986–87 fiscal year. The appeal before us does not seek to invalidate these transfers or recapture the transferred money for the Protest Fund. But plaintiffs have on May 14, 1986, filed a Supplemental Petition with an application for injunctive relief enjoining further transfers from the Protest Fund pending the outcome of their actions.

The original suit on the constitutionality of the gross premium tax remains pending in the district court. On May 22, 1986, the judge of the district court denied the supplemental petition for injunctive relief. It is from that order that the plaintiffs appeal.

The Insurance Commissioner urges that the present action is premature for want of a justiciable controversy—that the legislative action sought to be averted in transferring more money from the Protest Fund is merely threatened and not yet enacted. In the hearing on plaintiffs' application for injunctive relief, however, defendants pro-

duced affidavits and testimony of the Governor of Oklahoma, the Senate President Pro Tempore, and the Speaker of the House of Representatives, all of whom were in agreement that the State has a substantial need of the use of the monies in the Insurance Commissioner's Protest Fund, that the use of such monies is an important component of the budget which is planned for the 1986–87 fiscal year, and that if the State were prohibited from using these funds, it would be disruptive to the State in planning its fiscal affairs for the coming year. Additionally, the President Pro Tempore in his testimony gave assurances that he would expect any judgment obtained by plaintiffs in this action to be satisfied notwithstanding a deficiency in the Insurance Commissioner's Protest Fund. Senator Lee Cate had previously testified that the 1986–1987 budget would include the appropriation of $42 million from the Protest Fund. If so taken the Fund would then have a balance of approximately $30 million of a total of $139 million that the Fund would have but for the transfers. In *In re Goodwin,* 597 P.2d 762, 764 (Okl.1979) we said:

> "Whenever widespread interest may demand an immediate resolution of some vital public law issue, *no* impediment arising from infirmity in the procedural posture of the case—however well recognized in purely private litigation—will bar our exercise of reviewing powers." (Court's emphasis.)

We find before us a very real, and therefore justiciable, controversy of vital interest to the public and proceed to consider the case on its merits.

At the outset we note that just as it is the legislature that would take funds from the Protest Fund to meet the current revenue shortfall, it was the legislature that established the Fund under Section 206 in first place. And as the legislature may give, the legislature may also take away. *Unless,* that is, and this is a large "unless", that which it would take away is a right protected under the Constitution of either the State of Oklahoma or the United States. Plaintiffs have tendered for our consideration several provisions of the state and federal constitutions [1] which they urge will be violated by the pending transfer out of the Insurance Commissioners Protest Fund. We need address only one, however, for Art. 5, § 54 of the Oklahoma Constitution is dispositive of the case. It provides in pertinent part:

> "The repeal of a statute shall not ... affect any accrued right, or penalty incurred, or *proceedings begun* by virtue of such repealed statute." (Emphasis supplied).

Our question, then, is to determine whether the plaintiffs' acts of paying the taxes to the Commissioner, serving their notices of protest, and timely filing suit in the district court, all done pursuant to Section 206, constitute a "proceeding begun" which may not be constitutionally interdicted by changing the statute. As the following cases indicate, the constitutional provision is no stranger to this court.

In *Harlow v. Bd. of Com'rs.,* 33 Okl. 353, 125 P. 449 (1912) a statute prohibited the construction of bridges within six miles of another bridge on the same stream. The commissioners resolved to build a bridge contrary to that rule. Plaintiff, a taxpayer, sued to enjoin the carrying out of the contract for the bridge. The trial court issued, but then dissolved an injunction. Taxpayer appealed. The Supreme Court noted that while the appeal was pending the "six mile" statute was repealed by the legislature, but held that by reason of Art. 5, Section 54 the repealing act did not affect the proceeding, and ruled for the plaintiff.

1. Plaintiffs additionally urge that the transfers would violate:
   Okla. Const. Art. 5, § 52 (take away existing cause of action or defense);
   Okla. Const. Art. 2, § 15 and U.S. Const. Art. 1 § 10, Cl. 1 (impair obligation of the state);
   Okla. Const. Art. 2, § 7 and 14th Amendment, U.S. Const. (due process of law); and
   Okla. Const. Art. 2, § 24 and 14th Amendment, U.S. Const. (taking private property without just compensation).

In *Gayman v. Mullen,* 58 Okl. 477, 161 P. 1051 (1916) plaintiff sought to vacate an assessment for drainage benefits. On appeal the assessment was upheld, notwithstanding a change in the statute which provided for a different method of selecting drainage district viewers. The court in its syllabus stated (P. 1051)

> "(a) Under section 54, art. 5 (Williams, § 144), of the state Constitution, the repeal of a statute does not affect proceedings begun by virtue of such repealed statute, where the rights to which the proceedings relate remain unchanged, although such proceedings are in a matter involving legislative as well as judicial questions and in the main are of legislative character."

In *Green v. Board of Com'rs of Lincoln Co.,* 126 Okl. 300, 259 P. 635 (1927) the commissioners by resolution and notice called an election at which county bonds for road improvements could be voted. On the afternoon of the election day the Governor signed a bill passed by the legislature which amended or repealed the law under which the bonds were to be voted. The Lincoln County voters approved the bonds, but suit was brought to enjoin their issuance and sale on the basis that the law was changed before the election was final. This court rejected the suit with the following language:

> "If the voting, issuance, and sale of the bonds in question can be termed a 'proceeding,' as contemplated by section 54 of article 5 of the Constitution, then it is clear that Senate Bill No. 87 has no application, and the county commissioners are justified and authorized to issue and sell the bonds according to their contract with Mr. Trapp."
>
> "In 32 Cyc. 406, proceeding is defined as follows:
>
> 'In its general acceptation, an act which is done by the authority or direction of the court, express or implied; an act necessary to be done in order to obtain a given end; a prescribed mode of action for carrying into effect a legal right; performances of an act, wholly distinct from any consideration of an abstract right; the form and manner of conducting judicial business before a court or judicial officer; regular and orderly progress in form of law; including all possible steps in an action, from its commencement to the execution of judgment....' "
>
> "In the light of these authorities we cannot agree with the contention of learned counsel who argue in their briefs that what was done in the instant case does not constitue (sic) a 'proceeding,' within the contemplation of the section of the Constitution above quoted, and having reached the conclusion that the proceeding having been commenced under the law as it existed prior to the approval by the Governor of Senate Bill No. 87, we must necessarily conclude that the proceeding was governed entirely by the law as it existed prior to the passage and approval of Senate Bill No. 87."
>
> "In other words, when the board of county commissioners, by their resolution and notice, put the machinery in motion to vote the bonds in question they began a 'proceeding,' and such proceeding was not or will not be terminated until the final object of the 'proceeding' has been accomplished, to wit, the sale of the bonds; and in accomplishing this *the law, as it stood upon the statute books of the state at the time the proceeding was commenced, defines their duties and limits their authority.*" Id. 259 P. at 637. (Italics ours).

In *State v. Worten,* 167 Okl. 187, 29 P.2d 1 (1933) the court examined a statute which in effect declared a moratorium on actions to foreclose mortgages on real estate. It held the statute inapplicable to foreclosure proceedings pending at the time of the effective date of the statute, stating in its syllabus:

> "1. The provision of section 54, article 5, of the Constitution of Oklahoma, that the repeal of a statute shall not affect any proceedings begun by virtue of such repealed statute, applies whether the repeal be expressed or implied; the pur-

pose of the provision being to require an action to pass to judgment under the law applicable thereto at the time of the institution of the action unaffected by any change in the law made after the institution of the action."

The court also favorably quoted the Black's Law Dictionary definition of "proceeding":

"In a general sense, the form and manner of conducting judicial business before a court or judicial officer; *regular and orderly progress in form of law,* etc. The italization is ours." *Id.* 29 P.2d at 2.

In an apparent reference to the times that produced the moratorium legislation the *Worten* court cautioned:

"We do not think the court should be swayed by public sentiment to alter, modify, or repeal any provision of the Constitution by the mere use of its power so to do. In the language of Mr. Justice Osborn, in *Ind. Sch. Dist. #39, Creek Co. v. Exchange National Co.* [164 Okl. 176], 23 P.2d 210, 212 [1933]: 'We do not believe that our courts should base their decisions involving the fundamental rights of citizens on proprieties and exigencies of the occasion.'" Id. 29 P.2d at 4.

For other cases in accord see *Aldridge Hotel v. Mainard,* 171 Okl. 422, 43 P.2d 738 (1935), *Oklahoma City Building and Loan v. Burnes,* 167 Okl. 53, 29 P.2d 22 (1934), *Oklahoma City Building and Loan v. Hooker,* 167 Okl. 208, 29 P.2d 21 (1934).

In more recent times we re-examined Art. 5, Section 54 in *In re Application of Bd. of Education of Western Heights School District,* 565 P.2d 677 (Okl.1977). Therein we held that a bond election *called* prior to a change in the law, but *held* after the change, was valid. Relying much on *Green v. Bd. of Co. Com'rs.,* supra, we determined that the calling of the election was a "proceeding begun" pursuant to Art. 5, Section 54, and that the new act that became effective only after proceedings had begun was not applicable to the bond issue.

Our most recent visit to the problem was *First National Bank of Pauls Valley v. Crudup,* 656 P.2d 914 (Okl.1982) wherein we held that once a lien statement was timely filed a subsequently enacted statute of limitations was ineffective as to that claimant. We said

"The term 'proceedings begun' refers to essential steps or measures to invoke, establish, or vindicate a right.'

"Within the meaning of § 54, the phrase 'proceedings begun' most surely embraces all of the statutory steps required by law for the establishment and foreclosure of a statutory lien claim. Timely filing of a lien statement is necessary to impress a materialman's lien. It is a condition precedent to a foreclosure. It is indeed the first critical step in the 'proceedings begun.'" Id. at 916. (footnotes omitted).

The legislature in enacting Section 206 has established a procedure for the payment of taxes under protest, the holding of the funds so paid in a special trust fund pending litigation of the protest, and providing for prompt reimbursement from the fund if the protest is successful in court. It is clear that the plaintiffs have invoked the provisions of Section 206 by paying the tax, serving notice of the grounds on which they complain, and filing suit timely (in 1981) in district court to contest constitutionality. There can be no doubt but that the proceedings established by Section 206 have been began.

Now the legislature would invade the Protest Fund to transfer monies out for other purposes. Legislative acts authorizing transfers from the Protest Fund are nothing less than partial repealers of Section 206. Art. 5, § 54 "applies whether the repeal is expressed or implied." *State v. Worton,* supra. The proposed action transferring funds from the Protest Fund once the "proceeding" has been "begun" is contrary to the Oklahoma Constitution and therefore invalid.

The order of the trial court denying injunctive relief is reversed. The Insurance Commissioner for the State of Oklahoma is enjoined from making further transfers of monies from the Insurance Commissioner's

Protest Fund (including earnings thereon) except pursuant to the express provisions of 62 O.S.1981 § 206, such injunction to remain in effect pending determination of plaintiffs' constitutional challenges to Oklahoma's gross premium tax laws.

SIMMS, C.J., DOOLIN, V.C.J., and OPALA, J., concur.

ALMA WILSON, J., concurs specially.

HODGES, LAVENDER and HARGRAVE, JJ., dissent.

KAUGER, J., disqualified.

OPALA, Justice, concurring.

I concur in the court's pronouncement that, during the pendency of the appellants' 1981 protest proceedings, the Legislature may not authorize, *without offending Art. V, § 54, Okl. Const.*, a diversion of money from the § 206 [1] account kept by the Insurance Commissioner for payment of tax refunds unless its action be in conformity to the terms of that section's version in force at the time the protest proceedings were triggered.

I write separately to articulate my view that a contrary holding today clearly would violate Art. V, § 46, Okl. Const. As refund claimants in pending judicial tax protest proceedings appellants cannot be relegated to a less efficacious remedy for enforcing a judgment for tax refund against the State than that which is affordable by law to successful protesters seeking satisfaction of adjudicated refund claims from § 206 accounts of *other* agencies. *By the clear command of Art. V, § 46* [2] *all taxpayers must be provided with the same method for collecting their § 206 refund claims. For that purpose all* § 206 claimants must be treated alike. They comprise a single, indivisible class which may not be dichotomized into distinct subclasses. Non-uniform regulation of procedure for enforcement of judgments is plainly, absolutely and unequivocally interdicted by the command of our fundamental law.[3]

ALMA WILSON, Justice, concurring specially:

The etiology of legislative distress, as I perceive it, derives from Article 10, Section 23 of the Constitution of the State of Oklahoma, which unequivocally mandates a balanced annual state budget pursuant to clearly enumerated procedures. In pertinent part, Section 23 states:

> *§ 23. Balanced budget—Procedures*
>
> "The state shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the state, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as may be provided in this section and in Sections 24 and 25 of Article X of the Constitution of the State of Oklahoma.
>
> To ensure a balanced annual budget, pursuant to the limitations contained in the foregoing, procedures are herewith established as follows: ..."

The salutary policy embodied in this budget balancing constitutional provision has previously been considered by this Court in *Boswell v. State,* 181 Okl. 435, 74 P.2d 940 (1937). This Court acknowledged therein that the debt limitation provisions of the Oklahoma Constitution are a vital part of the document and were adopted for the purpose of fixing the power and responsibility of legislation relating to the fiscal affairs of the state upon the *existing* legislative assembly, and to prevent one legislative assembly from laying its mandate upon a future legislature. Thus, debt limitation guarantees the autonomy of future legislative bodies

1. 62 O.S.1981 § 206.

2. The terms of Art. V, § 46, Okl. Const., provide in pertinent part:

"The Legislature *shall not ... pass any local or special law authorizing*:

* * * * * *

*... changing the methods for ... the enforcement of judgments....*" *[Emphasis added.]*

3. See, *Maule v. Independent School Dist. No. 9,* Okl., 714 P.2d 198, 204 [1986] and *Barrett v. Board of Com'rs of Tulsa County,* 185 Okl. 111, 90 P.2d 442, 446–447 [1939].

and protects Oklahoma citizens from deficit spending beyond the revenues available.

More recently, this Court said of Article 10, Section 23, in the case of *Smith v. State Board of Equalization,* 630 P.2d 1264 (Okl. 1981):

> "Article 10, § 23 was adopted by the people in 1941 to provide for budget balancing in this state. There is no room for construction or provision for further inquiry when the Constitution plainly speaks. A constitutional amendment should be construed in consideration of its purpose and be given a practical interpretation to carry out the plainly manifested purpose of the people who adopted it. *The fiscal responsibility shown by Oklahoma has become an enviable example for the nation. This policy of fiscal restraint and control can only be applauded in a time of monetary crisis.* We do not find this constitutional requirement to be unduly burdensome nor to be a vain endeavor. The citizens of this state, as well as the Legislature, have a vested constitutional right to know how much money is available for appropriation to the General Revenue Fund and special funds which are supported by direct taxes, fees, or other revenue." [Emphasis mine.]
>
> . . . . .
>
> *"[W]e hold that all funds which receive funds from taxes, charges, costs, grants, or other revenue are within the purview of Art. 10, § 23."* [Emphasis mine.]

In the case now before this Court, an application for injunctive relief to enjoin subsequent transfers from the Protest Fund in dispute was requested pending the disposition of the original suit challenging the constitutionality of the gross premium tax assessed against the Appellants herein. The trial court declined to issue the requested injunction. On appeal oral argument was granted in this matter. During the course of oral argument before the Oklahoma Supreme Court on June 3, 1986, counsel for the Insurance Commissioner protested injunctive relief as premature, on the ground that the legislative action sought to be averted in transferring more money from the Fund was merely threatened and not yet enacted. On June 11, 1986, Appellants filed in this action a copy of an Engrossed House Bill which had passed both houses of the Oklahoma Legislature on June 10, 1986. The Bill, *inter alia,* purports to authorize the transfer of additional monies from the disputed Fund and appropriates to the Department of Human Services an identical dollar amount, and further provided for payment of judgment debts incurred to protestants by reason thereof up to three years after presentation of a judgment debt finding that taxes sued for were illegally collected. We issued our order prohibiting transfer of additional monies from the special Protest Fund. I concur in the majority's reversal of the trial court's denial of injunctive relief and the decision to enjoin further transfers from the disputed Fund, except pursuant to the express provisions of 62 O.S. 1981 § 206, according to its provisions in effect at the time these proceedings ensued.

Aware, as I am, of the extremely difficult economic climate which presently pervades our State, and the attendant pressures upon our lawmakers to somehow maintain financial parity, an almost impossible task, I believe it even more imperative that this Court, as final guardians of the law sworn to defend and protect the Constitution, face up to our judicial responsibility. The task is not simple, although the admonition is. Fortunately, the 'separation of powers' in state government serves to distribute the responsibilities. It is incumbent upon this Court to discharge this duty. Otherwise, review by this Court would fail of its purpose in safeguarding constitutional rights.

I concur in the views expressed today by the majority. It is additionally my view, and my grave concern, that this Court not preside over the demise of the budget balancing amendment through silence or inaction.

LAVENDER, Justice (dissenting):

I must respectfully dissent from this Court's application of Oklahoma Constitution, Art. V, § 54, in this case. The cases cited in the majority opinion in support of its result are clearly distinguishable from the circumstances of the present controversy. Those cases each dealt with situations in which the subsequent legislation found to be constitutionally invalid had attempted to detrimentally affect the remedy sought to be invoked by the proceedings begun prior to the enactment of that legislation. In the instant case the legislation now enacted does not detrimentally affect appellants' (plaintiffs') rights to pursue the tax protest action and to obtain a judgment against the State which would then be satisfied under the provisions of the challenged legislation.[1]

In *Harlow v. Board of Commissioners,* 33 Okl. 353, 125 P. 449 (1912), the plaintiffs sought to enforce a law in effect at the time the proceedings were initiated, i.e. that no bridge might be built closer than six miles to an existing bridge. The object of the proceeding was to enforce this provision. This Court held that the repeal of this law subsequent to the bringing of the proceeding was not effective in that case, as to give it effect would destroy the object of the proceeding. In the cases of *Green v. Board of Commissioners,* 126 Okl. 300, 259 P. 635 (1927), and *In re Application of Board of Education of Western Heights Schools,* 565 P.2d 677 (Okla.1977), proceedings had been initiated to vote bonds as authorized by existing state laws. Subsequent legislation had revoked authorization for these proceedings. Again, Art. V, § 54, was invoked to prevent this subsequent legislation from destroying the purpose for which the proceedings were initiated.

In *State v. Worten,* 167 Okl. 187, 29 P.2d 1 (1934) and its related cases *State v. Hooker,* 167 Okl. 208, 29 P.2d 21 (1934); *Oklahoma City Building & Loan Ass'n. v. Burnes,* 167 Okl. 53, 29 P.2d 22 (1934); and *Aldridge Hotel Co. v. Mainard,* 171 Okl. 422, 43 P.2d 738 (1935); this Court held invalid that section of the Mortgage Moratorium Act which applied that Act to proceedings begun prior to its effective date. In *Aldridge,* 43 P.2d at 740, we set forth the reason for our action:

> It was held that section 1 of said statute was invalid and unconstitutional in that it delayed mortgage foreclosure actions without adequate compensation to the mortgagee, and without any provision for the protection of the mortgage during the period of the delay.

The right to bring the mortgage foreclosure action in those cases had accrued as a matter of contractual right at the time proceedings were begun. Thus the application of Article V, § 54 in those cases prevented subsequent legislation from interfering with the pursuit of vested rights, the protection of which was the object of the proceedings begun prior to the effective date of the legislation. See *Cowart v. Piper Aircraft Corp.,* 665 P.2d 315 (Okla. 1983).

In *First National Bank of Pauls Valley v. Crudup,* 656 P.2d 914 (Okla.1982), we again faced a situation where the application of a law enacted after the filing of a lien statement would have barred an action to recover on the lien. We held that the right to bring an action on the lien accrued at the time the lien was filed and that the law in effect at that time would have allowed the action. The application of Art. V, § 54, in that case again was made to prevent the destruction of a cause of action by subsequently enacted legislation.

The rights involved in the present case are of an entirely different character. The primary rights at issue are appellants' (plaintiffs') rights to protest the payment

1. Both parties have represented to this Court that the Conference Committee Substitute for H.B. 1637 which effectively transfers $42 million dollars from the so-called protest fund has passed both houses of the Legislature and has been signed, with an emergency provision, by the Governor as of June 11, 1986. This legislation also provides a method for payment of successful tax protests.

of taxes and to have that protest adjudicated, and to receive judgment against the State if they should prevail. The legislation challenged here does not detrimentally affect that right. The only "right" to be affected by the legislation is the "right" to have protest funds held in a separate account. No right to these funds has attached by mere virtue of the filing of the tax protests. If appellants were to gain a right to these funds it would have attached only at the time when judgment is rendered on their protests.[2] The legislation now enacted provides a method by which any judgment would be satisfied. The question of the placement of funds pending the resolution of a protest is merely procedural in nature. Appellants have no accrued right to prevent a change in this merely procedural aspect, where such a change does not interfere with their right to bring the proceedings initiated to culmination and to obtain their desired remedy.

To hold otherwise, and to allow the mere use of the term "proceeding" to apply to any aspect of the maintenance of a cause of action, results in a victory of empty form over substance and defeats the intent of the Constitutional provision. Art. V, § 54, exists to protect that class of interests which has achieved the dignity of "accrued rights," and to protect those proceedings brought to enforce such rights. It was never intended to prevent legislative actions which have no effect upon the enjoyment of those rights. In this case the only accrued right of appellants is the right to maintain their protest and to obtain a judgment which shall be paid by the State of Oklahoma. The legislation challenged does not affect the proceedings begun to enforce this right. For these reasons I must dissent from the opinion of the Court.

HODGES and HARGRAVE, JJ., join in the views expressed herein.

2. See *Baker v. Oklahoma Firefighters Pension and Retirement System,* 718 P.2d 348 (Okl.1986).